[Civ. No. 19685.   First Dist., Div. Two.   June 27, 1961.]

REDEVELOPMENT AGENCY OF THE CITY AND COUNTY OF SAN FRANCISCO, Appellant, v. MARGARET MAXWELL, Respondent.

Dion R. Holm, City Attorney, Patrick R. Kelly, Deputy City Attorney, and John D. Rogers, for Appellant.

Joseph A. Brown and Chauncey Tramutolo for Respondent.

Shirley, Saroyan, Cartwright & Peterson and J. Francis Shirley as Amici Curiae on behalf of Respondent.

DRAPER, J.—Plaintiff appeals from judgment entered in an eminent domain proceeding. Defendant's property is being taken for a redevelopment project in the section of San Francisco known as the Western Addition. Her lot is 100 feet by 40 feet. On it are three buildings, each 33⅓ feet wide, and each containing three flats.

Summons was issued June 12, 1959. Although the case went to trial slightly more than a year after the issuance of summons, it was stipulated that this delay should not affect the statutory valuation date (Code Civ. Proc., § 1249). It is conceded that no right of immediate possession was available to the condemner (Cal. Const., art. I, § 14), and no such possession was sought or had.

A fire damaged the buildings on the night of August 12-13, 1959. Although the trial court sustained objections to questions as to the extent of the resulting damage, some testimony did go in when the owner's trial counsel failed to object. This evidence indicates that the westernmost building was badly damaged by fire, and that there was some damage to at least one other building. There was testimony, before interposition of objection, estimating that the fire reduced the total value of defendant's property by about half.

The condemner offered to prove that the owner had received $17,500 from her fire insurance carrier by reason of this fire loss. The offer was rejected. Defendant owner concedes receipt of this payment, but argues that it cannot affect the amount of the award. The trial court also refused the plaintiff's requested instruction that ''the property owner must bear any loss resulting from a fire occurring before the award is made.'' The several expert appraisers valued the property, in its condition as before the fire, from $55,000 to $84,500. The jury awarded $60,000, and plaintiff appeals from the judgment incorporating this award.

Under the instructions, the jury award must be deemed to represent full market value of the property at the date summons was issued, without deduction for the destruction by fire of a substantial portion of the improvements. Thus the owner, if this judgment is affirmed, will receive the award of full value for the undamaged premises plus the insurance paid for a fire loss occurring after issuance of summons. The condemner, on the other hand, will pay for a damaged structure its full value before the fire for which the owner has been separately compensated.

Normally one who has both title and possession of real property, as the owner did here, bears the risk of loss. As between parties to a contract of sale of real property, the vendor bears the risk of destruction of a material part of the subject matter if neither legal title nor possession has been transferred. It is only when either legal title or possession has been transferred before destruction of a material part of

the subject matter that the risk of loss shifts to the vendee (Civ. Code, § 1662). In the case at bar, both title and possession remained in the condemnee at the time of the fire.

Even this analogy, however, is unduly favorable to the condemnee. Actually, the mere commencement of an eminent domain proceeding does not bind the condemner to buy. At any time after filing of the complaint and until 30 days after final judgment, the condemner may abandon the proceedings (Code Civ. Proc., § 1255a), in the absence of some element of equitable estoppel (*Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309 [44 P.2d 547]) which is neither present nor suggested here. Lacking any obligation upon the condemner to take and pay for the property, the situation more nearly resembles an option than a contract of purchase and sale. It would hardly be contended that an optionee bears the risk of loss of the property optioned.

In condemnation proceedings, the problem of fixing risk of destruction of the property after summons issues and before trial has not arisen in any reported California decision. In other jurisdictions, there is but little authority. Substantial damage to a toll bridge, occurring after commissioners' recommendation of an award but before court action upon their report, was held to require reversal and a new award (*Farmer* v. *Town of Hooksett,* 28 N.H. 244). In a similar factual situation, commissioners appraised a toll bridge before it was damaged by flood, and the court had confirmed the award after the flood damage occurred. The order confirming the award was vacated by the trial court (*In re Hudson River Toll Bridge,* 81 Misc. 324 [142 N.Y.S. 949]). The ensuing award, made after the damage was repaired by the condemnee but refusing its claim that the award should be increased by the cost of such repairs, was confirmed by the same trial court (83 Misc. 331 [145 N.Y.S. 1058]).

Alabama, in a recent case, adopts the contrary view. In that case (*County of Jefferson* v. *Adwell,* 267 Ala. 544 [103 So.2d 143]), a building upon the property condemned was destroyed by a fire occurring after commencement of the proceeding but before final award. The court held that value was properly fixed as of date of commencement of the eminent domain proceeding, without regard to the subsequent destruction by fire. It is somewhat difficult to determine the reasoning upon which the decision is based. In 1956, a divided court reversed the judgment below. In 1958 a rehearing was granted, and the court, by a four to three vote, adopted the

dissenting opinion initially filed. The several opinions make for some confusion as to the true ground of decision. It seems to turn on the date of "taking," which in Alabama is fixed by decisional law rather than by statute. The confusion is somewhat compounded by the statement of the ultimate majority that, although "valuation should be determined as of the date of the filing . . ., compensation should not be awarded for property destroyed by fire subsequent to the date of the filing of the application for which the landowner has been compensated, by insurance or otherwise. In the instant case there was no insurance." (*County of Jefferson* v. *Adwell*, 267 Ala. 544 at p. 555 [103 So.2d 143 at p. 152].) We find difficulty in comprehending why the reasonable market value to be paid by a condemner should vary in amount because the condemnee was or was not insured. Rather, the logical approach indicates that the risk of loss be determined, leaving to the party bearing that risk the decision whether to secure insurance.

We feel that the weight of authority, reason and analogy favor placing the risk of loss upon the condemnee until there is an actual taking of possession or of title by the condemner (see Continuing Education of the Bar, California Condemnation Practice, pp. 171-2; Cal. Law Rev. Comm., Recommendation and Study Relating to Taking Possession and Passage of Title in Eminent Domain Proceedings [Oct. 1960] p. B-53). It is also to be noted that the Law Revision Commission recommended legislation providing that risk of loss to improvements remain on the owner until title, possession, or the right to possession is transferred to the condemner (Cal. Law Rev. Comm., *supra*, p. B-17). This recommendation was substantially adopted by the 1961 Legislature.

In the absence of some statutory provision on the subject, we are convinced that the rule should place the risk of loss upon the condemnee. In California, however, the statutory provisions governing eminent domain are detailed. Our question, therefore, is whether the statute, properly construed, does govern.

The only provision urged as bearing upon this subject is found in Code of Civil Procedure, section 1249, which provides in part:

"For the purpose of assessing compensation and damages the right thereof shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure of compensation for all property to be

actually taken, and the basis of damages to property not actually taken but injuriously affected, . . . .''

Respondent owner argues that in fixing the date of valuation, this section has the effect of transferring the risk of loss upon that date. Appellant condemner stresses that this date is for valuation only of ''property to be actually taken,'' thus excluding any property destroyed after issuance of summons and therefore not actually taken by the condemner.

It seems clear that the primary purpose of the Legislature in enacting section 1249 was to protect the parties against fluctuations in the market value of real property. This view is strengthened by the action of the Legislature at its 1961 session, in adopting a measure (Statutes of 1961, Chapter 1613) adding Code of Civil Procedure, section 1249.1, which specifically places the risk of loss upon the owner until passage of either title or possession to the condemner. The same measure amends section 1249, but does not in any way alter the language dealing with date of valuation. The indication is clear that the 1961 Legislature did not consider that its predecessors had acted upon the question of risk of loss. The 1911 proviso limiting use of the date of summons as the valuation date to cases tried within one year, unless the delay was caused by the defendant, obviously is designed to require the condemner to bring the case to trial expeditiously (see *People* v. *Murata*, 55 Cal.2d 1 [9 Cal.Rptr. 601, 357 P.2d 833]).

We have reviewed in detail the statutes dealing with eminent domain. We are satisfied that the question of risk of loss was not the subject of legislative inquiry or action. Nor is this surprising, in view of the infrequency with which the question has arisen in the United States. We are unable to read into the statutes any provision governing the issue of risk of loss. Thus we rely upon the general rule which leaves such risk with the owner who retains both title and possession.

The condemnee points to the final sentence of section 1249 which bars recovery by an owner for improvements added after service of summons in the eminent domain proceeding. She argues that in the light of this provision, fairness requires that the owner also be freed of the risk of loss of improvements which are in existence at the date of service. This argument is for the Legislature and not for the courts.

Respondent condemnee also points to the inconvenience and loss caused to the property owner in condemnation cases, for which compensation is not allowed. This, however, is not a sound ground for the courts to attempt balancing legislation

which might, in a particular case, remedy the claimed imbalance of equities. Again, the problem is one for the Legislature, rather than the courts.

We conclude that the risk of loss of property which is the subject of a proceeding in eminent domain remains with the owner until either title or possession is taken by the condemner. Destruction of a material part of the property, whether by fire or by vandalism, should be considered by the jury in diminution of the award. To effect the true purpose of section 1249, the market to be considered must be that existing on the date summons was issued. The property is to be valued as of that date, however, in its condition following the damage. It follows that the trial court erred in refusing to instruct upon this point and in sustaining objection to evidence which would have shown the extent and amount of the damage to the premises here in issue. Whether the owner carried insurance is, in this view, not a matter for consideration by the trier of fact, and evidence upon this issue was properly rejected.

Judgment reversed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied July 27, 1961, and respondent's petition for a hearing by the Supreme Court was denied August 23, 1961.