[Civ. No. 63108. Second Dist., Div. Five. June 2, 1982.]

SUSAN K. HARRIS, Plaintiff, Cross-defendant and Respondent, v. DIXON CADILLAC COMPANY, Defendant, Cross-complainant and Appellant.

COUNSEL

Manning, Leaver, Bruder & Berberich and Brent W. Smith for Defendant, Cross-complainant and Appellant.

Frederick E. Chol for Plaintiff, Cross-defendant and Respondent.

OPINION

HASTINGS, J.—This is an appeal from a judgment entered pursuant to a jury verdict awarding to respondent Susan Harris $10,000 in general damages and $45,000 in punitive damages for Dixon Cadillac Company's 1976 violation of the Automotive Repair Act (Bus. & Prof. Code, § 9884.9, requiring a written estimate and an authorization prior to repairing an automobile), and its subsequent detention of respondent's 1972 Cadillac Sedan DeVille.

Appellant does not now dispute the finding that it violated the Automotive Repair Act, but requests reversal because (1) the trial court's award of general damages was improper, unsupported by sufficient evidence, and excessive as a matter of law; and therefore, (2) the punitive damages award was excessive since it does not bear a reasonable relation to actual damages, and the award was not supported by sufficient evidence.

We affirm the judgment with the modification that the general damages be reduced to $7,500[1] to offset the return to respondent of her 1972 Cadillac.

The basis of respondent's action in replevin was the wrongful possession by Dixon Cadillac Company of her 1972 Cadillac after she refused to pay a repair bill which she claimed she never authorized.

In July 1976, respondent Susan Harris was living in Long Beach. She attended classes at Queen of Angels' Hospital in Los Angeles and worked part-time as a waitress at Denny's restaurant. Harris had purchased a used 1972 Cadillac Sedan DeVille in November of 1975. When her brother requested her assistance in July 1976 to obtain a bail bond for a friend, Harris left her automobile with Sam Gilbert, a bondsman, as collateral for the bail bond. Gilbert's partner involved the Cadillac in a traffic accident, and Gilbert referred Harris to an insurance adjuster, since her insurance on the car had recently expired. Either Gilbert or Harris had the car towed to Dixon's body shop where an estimate was to be written up on the car for insurance purposes.

The dispute giving rise to the action was based upon the parties' claims about whether authorization had been made for the repair of the Cadillac. Harris testified that when she telephoned Dixon on July 16, 1976, she was told her car had just been received and that a written estimate would be prepared within a week. When she called back on July 30, Harris was told that the car was already fully repaired although she had never authorized the repairs to be performed. Dixon's body shop manager, Rocco Fasone, testified that Harris had authorized the repairs of the Cadillac. He said that he remembered "writing the estimate and calling for authorization on it" and Harris had instructed him to repair it. Harris, in turn, testified that not only had she never received any telephone calls from Fasone, but Dixon never had a number where she could be reached.

Due to the loss of her car, Harris had to move to Hollywood to live with her brother and quit her job and school. Because she found no employment and could not afford the $10 to $15 per day leasing cost which she was quoted for rental automobiles, she finally moved back home to live with her parents in Kansas.

---

[1] A $2,500 reduction stipulated to by counsel to reflect the vehicle's value.

Harris, however, had attempted to recover her car from Dixon. When the dispute arose in July 1976, the insurance adjusters would not pay the full costs of the repair (although Harris received less than half of the costs of the repair in Oct. 1976). At the end of 1976, she filed a complaint with the California Bureau of Automotive Repairs against Dixon to effectuate return of her car. After a brief investigation, which was discontinued because of questionable acts on the part of Dixon, the agency suggested that Harris initiate a civil action. In February and March of 1977, Harris' counsel sent letters to Dixon's president which set forth Harris' circumstances and demanded return of her vehicle. Dixon refused the demand based on the position that the completed repairs had been authorized and should have been paid for.

A complaint alleging wrongful possession of the Cadillac was filed in May 1977 on behalf of Harris. Dixon thereupon filed a cross-complaint seeking the costs of repairs performed and storage charges pertaining to the vehicle. In November 1978, while Harris was living in Kansas, a notice of lienholder's sale was sent to her on behalf of the appellant, fixing the value of her car at $200 or less, and stating that appellant knew of no valid defense to the claim giving rise to the lien. Harris was able to return her "opposition to sale" within the allowed 20-day period. Respondent's counsel contended at trial that the low value figure was fixed to avoid securing the consent to the sale by the Department of Motor Vehicles required for sales over $200 and for complicating the lawsuit between Harris and Dixon.

The jury, in a 10-2 verdict, found for Harris and against Dixon, allowing the general and punitive damages as earlier stated. The trial judge denied Dixon's motion for a new trial and motion for judgment notwithstanding the verdict based upon claims of excessive damages awards and insufficient evidence to support the verdict.

I

GENERAL DAMAGES ISSUES

A. ▮▮▮ Appellant contends that the general damages award was improper in that it violated California Code of Civil Procedure section 667, which specifies, "[i]n an action to recover the possession of personal property, judgment for the plaintiff may be for possession or the value thereof, in case a delivery cannot be had, and damages for the detention." Appellant argues that since the Cadillac was being held by

Dixon and was obviously available for delivery, the jury's award of general damages included an amount representing the value of the Cadillac, which is prohibited by section 667. Respondent advised the jury in his final argument, "there is nothing in the verdict form that gives you the opportunity of saying 'return the car,' but if you feel that [Harris] is entitled to the return of the car then you just add the value figures."

■ This court will modify a judgment by its own order and affirm the judgment as so modified, thereby avoiding the "further delay or expense" to which all parties to the action would otherwise be subjected, whenever it is shown, "either by record on appeal, or by the admission or consent of the parties, that their rights can be finally determined here ...." (*Fox* v. *Hale & Norcross Silver Mining Co.* (1898) 122 Cal. 219, 221-222 [54 P. 731].) ■ Since both parties are willing to stipulate to the return of the car and therefore to offset the general damages by the amount of $2,500 which reflects the car's value, the general damage award will be reduced to $7,500.

B. Appellant also contends that the trial court's award of compensatory damages (now $7,500) was unsupported by sufficient evidence, excessive, and erroneous.

Citing *Mutch* v. *Long Beach Imp. Co.* (1920), 47 Cal.App. 267 [190 P. 638], appellant states that compensatory damages that far exceed the value of the personal property withheld from the true owner are invalid. In *Mutch*, the court stated, "In determining the value of the use under the above rule, care should be taken not to permit the fixing of an amount out of all proportion to the value of the thing itself; otherwise the result is not compensation for use but punishment for a wrong in a case where exemplary damages as such would not be allowed. So, where damages allowed for the detention of property for less than a year were more than twice the value of the property, it was held that such damages were grossly excessive. [Citations.]"

■ The *Mutch* decision has had some, but not extensive, decisional support. We are convinced the better rule is enunciated in both some earlier and more recent cases. In *Tucker* v. *Hagerty* (1918), 37 Cal. App. 789 [174 P. 908], decided two years prior to *Mutch* but not cited in the opinion, the plaintiff, as in our present case, filed an action in replevin to recover a wrongfully seized automobile. In discussing damages as authorized by Code of Civil Procedure section 667 (*supra*) the court

had this to say: "In such a case the successful party is entitled to recover, as damages for the detention, the value of such use during the period that he was wrongfully deprived thereof . . . .

"The reason for the rule in replevin is that interest or the value of the property does not furnish adequate compensation for the wrongful detention. . . ."

"The reason for the distinction between . . . conversion and replevin is well-stated in *Farrar* v. *Eash*, 5 Ind.App. 238: 'In replevin plaintiff never ceases to claim the property as his own, but seeks to obtain it rather than its value. In such case plaintiff, being entitled to the use of the property of which he has been unlawfully deprived, and not having waived the title thereof, has the right to recover the value of such use in damages . . . .'

"There is nothing so startling in the fact that the rental value allowed by the court amounts to more than the value of the machine as to compel a reversal of the judgment." The opinion then concluded with the following statement: "We think the trial court was authorized to fix the damages for the detention of the property, under section 667 of the Code of Civil Procedure on the basis of the rental value."

In *Stanley W. Smith, Inc.* v. *Pilgrim* (1931), 117 Cal.App. 244 [3 P.2d 573], decided 11 years after *Mutch*, the court was again addressing the issue of damages in a claim and delivery action for an automobile. Pertinent portions of the opinion state, "In an action for claim and delivery of personal property the party aggrieved is entitled to the usable value, regardless of whether or not he be shown to have hired other property to take its place [citations]. And compensation therefor need not be limited by the value of the property [citing *Tucker* v. *Hagerty, supra,* 37 Cal.App. 789)]. Where property detained has a usable value its owner is entitled to recover damages equivalent to the reasonable value of such use during the period he was wrongfully deprived thereof up to the time of the rendition of judgment."

Civil Code section 3333 provides, "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." In *Reynolds* v. *Bank of America* (1959), 53 Cal.2d 49 [345 P.2d 926, 73 A.L.R.2d 716], our Supreme Court dis-

cusses the operation of this section in a situation somewhat analogous to our present case. The court identified the issue by stating: "The sole question presented on this appeal is whether the owner of personal property which has been wrongfully destroyed is limited in damages to the value of the property at the time of destruction or may also recover for loss of use during the period reasonably required for replacement." After citing section 3333, the court then said, "It is established, under this section, that where a vehicle is injured by the wrongful act of another, the owner is entitled to recover for the damage done to the vehicle and also for the loss sustained by being deprived of its use during the time reasonably required for the making of repairs. [Citations.] There appears to be no logical or practical reason why a distinction should be drawn between cases in which the property is totally destroyed and those in which it has been injured, but is repairable, and we have concluded that when the owner of a negligently destroyed commercial vehicle has suffered the injury by being deprived of the use of the vehicle during the period required for replacement, he is entitled, upon proper pleading and proof, to recover for loss of use in order to 'compensate for all the detriment proximately caused' by the wrongful destruction." Had Dixon in our present case destroyed respondent's Cadillac, respondent under the *Reynolds* holding would have been entitled to not only the cost of her automobile but also for the damages for its wrongful destruction. The analogy is clear. It is not the value of the property itself that controls the amount of the compensatory damages. Damages are allowable for the detriment proximately caused by a wrongful destruction *or detention* as long as the damages themselves are provable and reasonable. (See also, *Zhadan v. Downtown Los Angeles Motor Distributors, Inc.* (1980), 100 Cal.App.3d 821 [161 Cal.Rptr. 225], where the value of the automobile was $1,200 to $1,700 and $5,342 in compensatory damages were allowed as well as punitive damages.)

▪ Appellant cites California Civil Code section 3359 providing that damages must in all cases be reasonable, to support its argument that compensatory damages exceeding the value of the property involved are unreasonable as a matter of law. For the reasons stated above, we disagree that the section so limits the damages. The question of reasonableness in the context of this case is whether respondent was able to prove that she suffered damages in the amount of $7,500 based on Dixon's wrongful detention of her Cadillac. Respondent testified that the reasonable use value of her car at the time of its detention was $10 to $15 per day. This was the only evidence of value offered into evi-

dence by either party. The award of $7,500 is less than $5 per day. In *Gainer* v. *Storck* (1959), 169 Cal.App.2d 681 [338 P.2d 195], the plaintiff Gainer sued for cost of repairs which he was required to pay for negligently repaired brakes and for damages of $4,880.58 for loss of use of his truck while it was being properly repaired. The defendant Storck on appeal argued "'[i]t would seem as if something were basically wrong with the judgment for $500 property damages plus $4,880.54 for the loss of the use of the truck for a maximum period of 3-1/2 months . . . .'" The appellate court in affirming noted that the only testimony concerning damages was the plaintiff's testimony and noted "the proof he submitted cannot be attacked as being too remote or too speculative to support the jury's award based on loss of profits from loss of use. . . . [¶] We find nothing in the record that justifies a reviewing court in refusing to accept as within the orbit of reasonable damages any part of the sum awarded by the jury and, on motion for new trial, approved by the trial court."[2]

## II

### PUNITIVE DAMAGES

A. Appellant's first argument on this issue is that where an appellate court finds the award of general damages must be reversed a portion of the judgment awarding punitive damages must also be redetermined. (*Kuffel* v. *Seaside Oil Co.* (1970) 11 Cal.App.3d 354 [90 Cal.Rptr. 209].) This argument, of course, fails because we have not reversed the jury award of general damages.

B. ■ Appellant's other contention is that the award of punitive damages is unsupported by substantial evidence, because it fails to support a finding of oppression, fraud, or malice on the part of defendant.

In discussing the element of proof necessary to support a judgment for punitive damages, our Supreme Court in *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878], stated, the requisite state of mind, often referred to as

---

[2] *Booth* v. *People's Finance etc. Co.* (1932) 124 Cal.App. 131 [12 P.2d 50], cited by appellant to further support its position on damages is not that favorable. The opinion states, "Nor would we be inclined to grant a reversal simply because the rental value, by which we mean the net rental value of the car, was shown to be in excess of the actual value of the car. We are simply calling attention to the fact that there is no testimony supporting the amount of the damages in this case."

"malice in fact," may be proved "either expressly (by direct evidence . . .) or by implication (by indirect evidence from which the jury may draw inferences)." (At p. 66.) Here, the trial judge reviewed the propriety of the punitive damages when he denied appellant's motions for a new trial and for judgment notwithstanding the verdict. We, too, are satisfied that the evidence supports the jury's decision to assess punitive damages against appellant.

In *Zhadan* v. *Downtown Motor Distributors, Inc., supra*, 100 Cal. App.3d 821, 836, in a case quite similar to the one at bar, the appellate court affirmed a judgment for punitive damages of $90,000, where the value of the automobile was between $1,200 and $1,700 and the general damages were $5,342. In response to appellant's claim that the evidence did not support the punitive damage award, the court stated, "'The evidence in this case supported plaintiff's charge of a serious violation of the policy of the Business and Professions Code provisions designed to protect consumers against unscrupulous automotive repair dealers. The jury was entitled to believe plaintiff's testimony which was to the effect that unauthorized repairs were performed on her vehicle for which defendants sought to charge over $1,950 . . . The jury was, therefore, entitled to consider defendant's conduct a flagrant violation of the provisions of Business and Professions Code section 9884.9 which provides in pertinent part: 'No work shall be done and no charges shall accrue before authorization for it to proceed is obtained from the customer.'" We have exactly the same situation in our present case. But, in addition, other acts by appellant further justified the punitive damage award. After Harris complained to the California Bureau of Automotive Repairs about the Automobile Repair Act violation, appellant did not explain its claim of having received an oral authorization, but sent copies of the repair order to the investigator which indicated that work had been in fact authorized by "Sam Gilbert" and "Sue Harris," since those names appeared as signatures on the order. In fact, the signatures on the order were *not* those of Harris and Gilbert. As a result, the agency ceased further investigation.

The more salient of defendant's poor conduct was a lien notice sent to respondent, which on behalf of the appellant stated, "I have no information or belief that there is a valid defense to the claim which gives rise to the lien." However, defendant was holding respondent's Cadillac for the repair charges and storage charges, and had received notice of the suit pending against it for violation of the Automotive Repair Act.

The general damage award is reduced from $10,000 to $7,500. In all other respects the judgment is affirmed. Costs of appeal are awarded to respondent.

Stephens, Acting P. J., and Ashby, J., concurred.