94 Cal.Rptr.2d 609 (2000)
22 Cal.4th 791
996 P.2d 711
The PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent,
v.
SOUTHERN CALIFORNIA EDISON COMPANY, Defendant and Appellant.
No. S078712.
Supreme Court of California.
April 20, 2000.
Rehearing Denied June 2, 2000.[*]
*612 Donald A. Redd; Douglas P. Ditonto, Rosemead; Berger & Norton and Michael M. Berger, Santa Monica, for Defendant and Appellant.
Daniel G. McGovern; William M. McMillan, Pasadena; David R. Simmes; Anthony J. Ruffolo; Alexander D. DeVorkin; Cox, Castle & Nicholson, Kenneth B. Bley, Los Angeles; Greines, Martin, Stein & Richland and Marc J. Poster, Beverly Hills, for Plaintiff and Respondent.
BROWN, J.
The purpose of our eminent domain statutes is obvious. The Legislature undoubtedly envisioned speedy acquisitions and timely compensation. Unfortunately, government agencies and public utilities sometimes have other priorities and do not follow the script. Consequently, we must now examine the applicability of one of these statutes to an acquisition that began over 30 years ago and consider whether the trial court properly awarded interest on an eminent domain award from the date of valuation rather than from the date of possession as required by Code of Civil Procedure section 1268.310.[1] We conclude the court acted properly by declining to apply section 1268.310 under the particular facts of this case, but abused its discretion by awarding interest from the valuation date. Instead, we hold that interest in this case should accrue from the date the con-demnee demanded legal action and asserted its statutory right to compensation.

FACTUAL AND PROCEDURAL BACKGROUND
In the 1960's, the People of the State of California (the State), acting by and through the Department of Transportation, decided to extend the 605 Freeway from Interstate 10 to Interstate 210. To do so, the State needed to acquire certain sections of a six-mile-long and 250-foot-wide corridor owned by Southern California Edison Company (Edison). Negotiations with Edison began in 1963.
Despite the early start, the State and Edison were unable to agree on the terms of the acquisition by 1969 when construction of the freeway extension was scheduled to begin. As a stopgap, the State and *613 Edison entered into a permission-to-enter agreement (Agreement). Under the Agreement, Edison gave the State permission "to enter, upon the lands of the Southern California Edison Company ... for the purpose of constructing or improving a public highway...." Permission was contingent "on the understanding that you [the State] will hereafter without unnecessary delay, negotiate with the undersigned [Edison] ... to agree upon terms of compensation, and that, if agreement cannot be reached, you [the State] will promptly commence eminent domain proceedings to have such compensation determined." The Agreement further provided that permission "shall continue in effect pending such negotiations, or until a reasonable time after you [the State] have been requested by the undersigned [Edison] to commence eminent domain proceedings." Finally, the Agreement established that the date of entry, June 20, 1969, "shall be" the date of valuation in any subsequent eminent domain proceeding and that any award made in the proceeding "shall bear interest at the rate of 7 per cent annum" from the date of entry.
Over the next 25 years, the State and Edison engaged in sporadic negotiations with no success. Despite the lack of progress, Edison did not ask the State to initiate eminent domain proceedings until July 24, 1994.[2] One month later, Edison filed an inverse condemnation action demanding compensation.[3] Over one year after Edison filed its action, the State filed a separate eminent domain action. The trial court consolidated the two actions and bifurcated the trial into a "legal issues" and a valuation phase.
In the legal issues phase, the trial court, concluding this was not a "close case," held that the State breached the Agreement. The court further found that the State "knowingly" delayed negotiations and misled Edison "up to a certain point ... with respect to what was being done." In a subsequent letter brief, the State conceded that, because the court found the State breached the Agreement, it should not enforce the Agreement and should, instead, use the date of valuation established by law. Accordingly, the court refused to enforce the Agreement's 1969 valuation date and reluctantly fixed the date of valuation as November 16, 1995, the date the State made a deposit of probable compensation in the eminent domain action. (§ 1263.110, subd. (a).) The court, however, found that Edison "wholly failed to act reasonably to protect its rights and mitigate its damages."[4]
At the end of the valuation phase, a jury awarded Edison $49.5 million in damages. Specifically, the jury found that the condemned property was worth $13.5 million and severance damages to the remainder of Edison's corridor totaled $36 million. In reaching this verdict, the jury largely adopted the valuation of Edison's expert who used an appraisal method that yielded the upper limit of value and calculated Edison's damages to be $54.5 million: $13.7 million for the condemned property plus $40.8 million in severance damages.
In posttrial proceedings, the trial court declined to accrue interest on the award from June 20, 1969, the date the State *614 took possession of Edison's property, as required by section 1268.310, and award Edison roughly $367 million in interest. Citing Edison's vast experience with condemnations, its lack of diligence, its receipt of an "extreme measure of value" and the existence of the Agreement, the court concluded the application of section 1268.310 to this case would violate the constitutional requirement of just compensation. Looking to inverse condemnation cases for guidance, the court then awarded Edison interest from the date of the valuation, resulting in an award of $5.65 million.
Upon announcing its decision, the trial court acknowledged that a reviewing court might reverse its interest award. In an attempt to avoid a waste of judicial resources, the court gave a "backup" position. Specifically, the court stated that, if a reviewing court disagreed with its decision, it would award interest from the date the State breached the Agreement. Although the court did not specify the date of the breach, it noted that this date was "significantly earlier" than the valuation date.
Both the State and Edison appealed. The Court of Appeal affirmed the judgment in its entirety. With respect to the interest award, the court relied primarily on Citizens Utilities Co. v. Superior Court (1963) 59 Cal.2d 805, 31 Cal.Rptr. 316, 382 P.2d 356 (Citizens Utilities), and held that the trial court properly exercised its inherent power to disregard section 1268.310. The court further concluded the trial court did not abuse its discretion by awarding Edison interest from the valuation date.
We granted review solely to determine whether the trial court acted properly by awarding interest on the jury's award from the date of valuation rather than from the date of possession as required by section 1268.310. We conclude the trial court properly declined to apply section 1268.310 under the unusual circumstances of this case, but abused its discretion by setting the 1995 valuation date as the accrual date. Instead, we believe interest should accrue from the date Edison demanded legal action from the State.

DISCUSSION

I
As an initial matter, we reject the State's contention that section 1268.310 does not apply because the State (a) acquired possession by agreement and (b) filed the eminent domain action after Edison filed an inverse condemnation action. Section 1268.310 provides that "[t]he compensation awarded in the [eminent domain] proceeding shall draw interest, computed as prescribed by Section 1268.350, from the earliest of the following dates: [¶] (a) The date of entry of judgment. [¶] (b) The date the plaintiff takes possession of the property. [¶] (c) The date after which the plaintiff is authorized to take possession of the property as stated in an order for possession." The statutory language does not distinguish between possession by agreement or by any other means. The statute also makes no distinction between eminent domain proceedings filed before or after the filing of an inverse condemnation proceeding. Finally, nothing in the legislative history suggests an intent to make these distinctions. Accordingly, section 1268.310, by its terms, applies and ostensibly requires the accrual of interest from the date of possession. (See Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299 (Lungren) ["If the language [of a statute] is clear and unambiguous there is no need for construction...."].)
Nonetheless, we find that section 1268.310 should not control here. Instead, we believe this case presents the rare situation where the literal application of a statute contravenes the legislative intent behind its enactment and extends its reach far beyond those situations contemplated by the Legislature.
Ordinarily, the literal meaning of the words of a statute governs. (See Lungren, supra, 45 Cal.3d at p. 735, 248 Cal. *615 Rptr. 115, 755 P.2d 299.) We will not, however, apply the literal language of a statute "when to do so would evidently carry the operation of the enactment far beyond the legislative intent and thereby make its provisions apply to transactions never contemplated by the legislative body." (People v. Davenport (1939) 13 Cal.2d 681, 685, 91 P.2d 892.) "A code may strive for comprehensiveness, but exceptional situations will arise." (Knox v. Phoenix Leasing Inc. (1994) 29 Cal. App.4th 1357, 1365, 35 Cal.Rptr.2d 141 (Knox).) As a result, we may decline to apply a statute in those rare cases where "it is obvious that the Legislature cannot have intended the statute to apply." (People v. Oliver (1961) 55 Cal.2d 761, 766, 12 Cal.Rptr. 865, 361 P.2d 593.)
These principles of statutory construction are especially germane in the eminent domain context because "the amount to be paid for property taken by the government is, under the Constitution, a matter for the courts rather than the Legislature...." (County of Los Angeles v. Ortiz (1971) 6 Cal.3d 141, 145, 98 Cal. Rptr. 454, 490 P.2d 1142.) Thus, courts have eschewed a literal application of our eminent domain statutes if such an application "ignores" the purpose behind the statutes. (City of Santa Barbara v. Petras (1971) 21 Cal.App.3d 506, 511, 98 Cal.Rptr. 635 (Petras) [refusing to apply § 1249].) Courts have also found one of these statutes inapplicable where the Legislature did not anticipate the particular facts of the case and undoubtedly did not intend for the statute to apply there. (See Redevelopment Agency v. Maxwell (1961) 193 Cal.App.2d 414, 418, 14 Cal.Rptr. 170 [refusing to apply § 1249].) Finally, courts have refused to apply our eminent domain statutes where their application would give the condemnee a "`windfall'" not intended by the Legislature. (City of North Sacramento v. Citizens Utilities Co. (1963) 218 Cal.App.2d 178, 188, 32 Cal. Rptr. 308 (City of North Sacramento) [refusing to apply former § 1255b].)
Guided by these principles, we find section 1268.310 inapplicable here. Specifically, we reject application of this statute under these particular facts because application would defeat the purpose behind the statute and go far beyond the intent of the Legislature.
Section 1268.310 is one provision in the lengthy and comprehensive statutory scheme governing eminent domain actions. Former section 1255b, the predecessor to section 1268.310, was first enacted in 1959. At that time, section 1255b only covered cases where the condemning agency obtained an order of possession and provided that interest would accrue from the date of that order.[5] In 1961, the Legislature amended section 1255b in an effort to gather the previously uncodified rules on interest awards in eminent domain proceedings into one statute.[6] (Taylor, Possession Prior to Final Judgment in California Condemnation Procedure (1966) 7 Santa Clara L.Rev. 37, 101.) Fourteen years later, the Legislature partially replaced former section 1255b with section 1268.310. As enacted in 1975, section 1268.310 was "the same in substance as subdivision (a) of former Section 1255b *616 except that the phrase `or damage [to the property] occurs' ha[d] been deleted from subdivision (2)." (Cal. Law Revision Com. com., reprinted at 19A West's Ann.Code Civ. Proc. (1982 ed.) foll. § 1268.310, p. 148.) The Legislature later amended section 1268.310 in 1986 and replaced the phrase "legal interest" with the phrase "interest, computed as prescribed by Section 1268.350." (Stats.1986, ch. 1372, § 1, p. 4906.)
In making these enactments and revisions, the Legislature had two main purposes in mind. First, the Legislature wished to establish a simple and fixed procedure for determining the just compensation constitutionally owed to a condemnee for delays in obtaining payment for its property. (Recommendation and Study Relating to Taking Possession and Passage of Title in Eminent Domain Proceedings (Oct.1960) 3 Cal. Law Revision Com. Rep. (1960) pp. B-56 to B-57.) Thus, section 1268.310like "all condemnation law, procedure and practice[]is but a means to the constitutional end of just compensation to the involuntary seller, the property owner." (Petras, supra, 21 Cal.App.3d at p. 510, 98 Cal.Rptr. 635.)
Second, the Legislature enacted these statutes to expedite the condemnation process, thereby reducing the uncertainty for condemnees. By accruing interest from the date condemning agencies either take possession or have the legal right to take possession of a property, the Legislature intended to encourage condemning agencies to act quickly once they determined the property was needed. (See Sen. Grunksy, letter to Governor Edmund G. Brown re Sen. Bill No. 347 (1959 Reg. Sess.) May 4, 1959, pp. 1-2.)[7] Thus, section 1268.310 was also enacted to further the other purpose behind our eminent domain laws: to ensure that "such proceedings shall be quickly heard and determined." (§ 1260.010; cf. State Roads Comm'n v. G.L. Cornell Co. (1991) 85 Md. App. 765, 584 A.2d 1331, 1340 cert. den. (1992) 325 Md. 248, 600 A.2d 418.) (G.L.Cornell) [the overarching purpose of the statutory scheme indicates the Legislature enacted the provisions governing interest awards in order to encourage quick action by the condemning agency].
Applying section 1268.310 to this case, however, accomplishes neither purpose. For example, awarding Edison interest from the date of possession goes far beyond the primary purpose of the statute to provide just compensation as required by the United States and California Constitutions. Rather, such an award would give Edison an undeserved windfall that the Legislature did not intend to bestow upon it.
"[T]he reasoning on which interest is added to value as a part of `just compensation' in court condemnation proceedings ... is that when a court determines just compensation, it fixes bare value at the time of the taking and adds a sum to compensate for deferred payment of bare value. ..." (Albrecht v. United States (1947) 329 U.S. 599, 603, 67 S.Ct. 606, 91 L.Ed. 532, italics added.) "[Interest is constitutionally compelled as reimbursement for lost use of money due as compensation for the property, but not paid contemporaneously with the taking." (Redevelopment Agency v. Gilmore (1985) 38 Cal.3d 790, 799, 214 Cal.Rptr. 904, 700 P.2d 794, (Gilmore) fn. omitted, italics in final phrase added.) Thus, the United States and California Constitutions only entitle condemnees to income they would have earned on money paid for the *617 property at the time of the taking. In determining this income, we use "the rates of return on interest-bearing obligations" and not the rate of return from investments "in stocks or other equity securities." (Id. at p. 806, fn. 17, 214 Cal.Rptr. 904, 700 P.2d 794.)
Here, $367 millionthe approximate amount of interest accrued since the date of possessiongreatly exceeds the amount required for just compensation to Edison. Because property values increased significantly between 1969 and 1995, the amount of interest accrued on the jury's award since 1969 dwarfs any return Edison could have earned from interest-bearing obligations if the State had paid for the condemned property in 1969. The difference is exacerbated by the fact Edison received the upper limit of value for its property. The parties' own estimation of the appreciation in property values since 1969 bears this out. According to Edison, property values appreciated approximately eight- to ninefold from 1969 to 1995. Similarly, the State suggested a sevenfold increase during this time. Using the jury's award of $49.5 million as the property's value in 1995 and adopting the lowest estimate of the property's appreciation, the 1969 value of the property would be, at most, $7.1 million.[8] Given that the interest accrued since the date of possession is approximately 7.4 times the principal, the amount owed to Edison for lost use would be no more than $53 million. This amount is well short of the $367 million Edison seeks.[9] Contrary to Edison's assertion, we do not believe "such generosity with [the State's] money to have been the legislative intent." (City of North Sacramento, supra, 218 Cal.App.2d at p. 188, 32 Cal.Rptr. 308.)
Applying section 1268.310 to this case also does not accord with the Legislature's desire to expedite the condemnation process. Although an award of $367 million would undoubtedly encourage condemning agencies to act quickly, the Legislature probably did not contemplate a sanction of this magnitude. Even if the Legislature did contemplate such a huge sanction, it surely did not intend to reward a sophisticated condemnee like Edison for its own lack of diligence with a bonanza in taxpayer money. In fact, awarding interest from the date of possession under these circumstances contravenes the purpose behind section 1268.310 by encouraging condemnees to delay negotiations and slow down condemnation proceedings in order to get a higher valuation and accrue more interest.
Indeed, the legislative history indicates that the Legislature, when enacting section 1268.310 and its predecessors, did not foresee the circumstances presented here. In explaining the reasoning behind the three statutory accrual dates, the California Law Revision Commission identified four "typical situations ... [¶] (a) Immediate possession is taken by the condemnor under an order for immediate possession. [¶] (b) Immediate possession is not taken. The case proceeds to a normal conclusion without appealthat is, interlocutory judgment, payment and final order of condemnation. [¶] (c) Immediate possession is not taken. The judgment is appealed but no possession is taken pending appeal. [¶] (d) Immediate possession is not taken. However, the judgment is appealed and possession is taken `after trial and judgment entered or pending an appeal' under Section 1254 of the Code of Civil Procedure." (Recommendation and Study Relating *618 to Taking Possession and Passage of Title in Eminent Domain Proceedings (Oct.1960) 3 Cal. Law Revision Com. Rep., supra, at p. B-57.) Thus, the authors of former section 1255b apparently assumed that condemning agencies would take possession of a property after filing an eminent domain action and obtaining a court order or judgment. They certainly did not conceive of a situation where, as here, the condemning agency eschewed the legal process and took possession of a property pursuant to an agreement that indefinitely postponed compensation, resulting in a quarter-century gap between the date of possession and the date of valuation. Because the Legislature did not contemplate the peculiar facts of this case and because the application of section 1268.310 in this case would defeat its purpose, we can assume the Legislature did not intend for the statute to apply here.
Accordingly, we conclude the trial court properly refused to apply section 1268.310 under the specific facts of this case. In doing so, we emphasize the narrowness of our decision. As a general rule, section 1268.310 describes the proper method for determining just compensation and appropriate sanctions for any delay in payment suffered by the condemnee. This is true even though the condemned property may be worth considerably more on the date of valuation than on the date of possession. (Metropolitan Water Dist. v. Adams (1940) 16 Cal.2d 676, 682-683, 107 P.2d 618 (Adams); City of Hollister v. McCullough (1994) 26 Cal.App.4th 289, 302, 31 Cal.Rptr.2d 415 (City of Hollister).) Likewise, the mere fact that the amount of interest exceeds the actual value of the property does not make this amount improper. (Cf. Harris v. Dixon Cadillac Co. (1982) 132 Cal.App.3d 485, 492-493, 183 Cal.Rptr. 299 [damages for lost use of property that exceed the value of the property are not unreasonable as a matter of law].)
Nonetheless, the unique aspects of this caseincluding the excessive amount of interest, the existence of an agreement that indefinitely postponed compensation, the huge gap between the date of valuation and the date of possession, the large sum of damages already awarded to Edison, Edison's familiarity with condemnation law and procedure and Edison's own lack of diligencejustify a different result. Although the Legislature is free to authorize compensation greater than the constitutional minimum (see Gilmore, supra, 38 Cal.3d at p. 801, 214 Cal.Rptr. 904, 700 P.2d 794 ["A statute's provisions may exceed constitutional requirements in one area while failing to fulfill them in another."]; see also United States v. 50 Acres of Land (1984) 469 U.S. 24, 30, fn. 14, 105 S.Ct. 451, 83 L.Ed.2d 376 ["Congress, of course, has the power to authorize compensation greater than the constitutional minimum."]), we do not believe the Legislature intended to give Edison an undeserved windfall in taxpayer money. Accordingly, we decline to apply section 1268.310 here.

II
Our conclusion that section 1268.310 is inapplicable does not, however, end our inquiry. In the absence of an applicable statute, equity must "operate" (Knox, supra, 29 Cal.App.4th at p. 1365, 35 Cal.Rptr.2d 141), and courts must devise their own procedure for ensuring just compensation (see Citizens Utilities, supra, 59 Cal.2d at p. 812, 31 Cal.Rptr. 316, 382 P.2d 356). Although the date of possession should not be the date of accrual, Edison is still constitutionally entitled to compensation for lost use of money owedbut not paidfor its property at the time of the taking. (See Gilmore, supra, 38 Cal.3d at p. 799, 214 Cal.Rptr. 904, 700 P.2d 794.) Given that an award of prejudgment interest is the established way to compensate for this loss (ibid), we must now determine the proper method for calculating this award. The trial court in this case concluded that awarding interest from the date of valuation was fair and ensured just *619 compensation. We disagree and hold that interest should run from the date Edison asked the State to commence condemnation proceedings and asserted its statutory right to compensation.
"Because condemnation and inverse condemnation ... are merely different manifestations of the same governmental power," we may look to inverse condemnation cases for guidance. (City of Oakland v. Oakland Raiders (1982) 32 Cal.3d 60, 67-68, 183 Cal.Rptr. 673, 646 P.2d 835.) These cases indicate that the interest award should approximate the amount of interest income the condemnee would have earned if it had diligently enforced its rights and received timely compensation from the condemning agency.
Thus, we have assessed interest from the date a condemnee first suffered appreciable damage to its property even though the damage began earlier. (See Mehl v. People ex rel. Dept. Pub. Wks. (1975) 13 Cal.3d 710, 720, 119 Cal.Rptr. 625, 532 P.2d 489 [awarding interest from the date the condemnee first became aware of the damage caused by the taking]; see also Orme v. State of California ex. rel. Dept. Water Resources (1978) 83 Cal.App.3d 178, 186, 147 Cal.Rptr. 735 [awarding interest from the date the condemnee would have received payment for crops lost because of the taking even though the taking occurred earlier].) We have also computed interest from the date the condemnee first asserted its legal rights over the condemned property despite an earlier date of possession. (See Pierpont Inn, Inc. v. State of California (1969) 70 Cal.2d 282, 298-299, 74 Cal.Rptr. 521, 449 P.2d 737 (Pierpont) [awarding interest from the date the owner declared a forfeiture of title to property conditionally given to the State even though the State violated the condition at an earlier date], overruled on other grounds by Los Angeles County Metropolitan Transportation Authority v. Continental Development (1997) 16 Cal.4th 694, 698, 718, 66 Cal.Rptr.2d 630, 941 P.2d 809.) Meanwhile, lower courts have awarded interest from the date of valuation rather than from the date of possession where the damage award already compensated the condemnee for lost use. (See Leaf v. City of San Mateo (1984) 150 Cal.App.3d 1184, 1192, 198 Cal.Rptr. 447 (Leaf) [awarding interest from the valuation date because the damage award "provides for just compensation for the taking based upon the inflated value"], disapproved on other grounds by Trope v. Katz (1995) 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259.) Finally, our sister courts have refused to accrue interest during delays caused by the condemnee's own lack of diligence. (See Currier v. Maiden Redevelopment Authority (1983) 16 Mass. App.Ct. 906, 449 N.E.2d 679, 681 (Currier) [awarding interest from the date the condemnee actually asserted his right to compensation after spending four years litigating other issues].)
Applying these principles, we find that the trial court abused its discretion by awarding interest from the valuation date. In making its interest award, the trial court apparently concluded the jury's award encompassed Edison's damages for lost use. (See Leaf, supra, 150 Cal.App.3d at p. 1192, 198 Cal.Rptr. 447; see also G.L. Cornell, supra, 584 A.2d at pp. 1337-1338 [if the appreciated value of the property exceeds "the sum of the fair value as of the time of taking and the investment income the owner could reasonably have earned had he received that value contemporaneously with the taking," then no prejudgment interest is constitutionally required].) However, a damage award in an eminent domain proceedingeven if it is greater than the value of the property at the time of the takingonly measures the condemnee's "damage for the taking" and does not cover the condemnee's damage "for being deprived of the use of said property prior to judgment." (Adams, supra, 16 Cal.2d at p. 683, 107 P.2d 618; see also City of Hollister, supra, 26 Cal. App.4th at p. 302, 31 Cal.Rptr.2d 415 ["The *620 condemnee is entitled to interest or other compensation for the value of the condemner's use of property even where the valuation date is the date of trial and the property is worth more at the time of trial than it was worth when the condemner took possession."].) Thus, Edison is entitled to some interest prior to the date of valuation as compensation for lost use even though the jury award greatly exceeded the value of its property at the time of the taking. Because the trial court's award deprives Edison of any interest on the award from the date of possession to the date of valuation, it is inadequate.
The trial court's alternative is also problematic. Awarding interest from the date the State breached the Agreement is arguably fair because Edison became entitled to the later valuation on that date. Nonetheless, it is incongruous to award interest from this date because the breach gave Edison the benefit of 25 years' worth of appreciation in property values. This approach also does not account for Edison's own lack of diligence. (See Currier, supra, 449 N.E.2d at p. 681.) Indeed, the date of the breach is the very date Edison should have acted to enforce its rights under the Agreement. Finally, the court's alternative does not account for the high damage award and may still result in an excessive interest award because the date of the breach is "significantly earlier" than the date of valuation.
Rather than adopt the trial court's proposals, we think interest should accrue from July 24, 1994the date Edison asked the State to commence legal proceedings as required by the Agreement. Using this date as the date of accrual is fair and reasonable because, until then, the State still had reason to believe the Agreement's 1969 valuation date governed. Indeed, Edison used the Agreement as the starting point for negotiations up until its demand for legal action. This approach also suitably penalizes Edison for any delay due to its own lack of diligence by not awarding interest until Edison acted diligently to enforce its rights. (See Currier, supra, 449 N.E.2d at p. 681.) Finally, our decision is consistent with Pierpont. In Pierpont, the condemnee conditionally granted the State title to its property. After the State breached this condition, the condemnee eventually asserted its right to forfeiture of the State's title and demanded just compensation. We affirmed the trial court's award of interest from the date the condemnee asserted its right to the propertyand not from the date of the breach. (See Pierpont, supra, 70 Cal.2d at pp. 298-299, 74 Cal.Rptr. 521, 449 P.2d 737.) Like the condemnee in Pierpont, Edison did not repudiate its Agreement with the State and assert its right to compensation under California's eminent domain law until July 24, 1994. Thus, accruing interest from this date is both fair and equitable. (Ibid.)
In doing so, we remain true to the legislative intent behind section 1268.310. Setting a different accrual date, while preserving the statutory basis for the interest calculation, is consistent with the Legislature's desire for a procedure that is "simple, fixed and easy of ascertainment" and avoids the need for additional expert testimony on the proper amount of compensation for lost use. (Recommendation and Study Relating to Taking Possession and Passage of Title in Eminent Domain Proceedings (Oct.1960) 3 Cal. Law Revision Com. Rep., supra, at p. B-57.) The resulting interest award is also large enough to discourage dilatoriness on the part of the State in future condemnations. Although the award falls well short of the $367 million sought by Edison, the award should still exceed $10 million. Considering the combined total of this interest award and the $49.5 million damage award, the State would be well advised to act more promptly in the future.
We recognize the resulting interest award may not fully compensate Edison for the lost use of its property even accounting for Edison's lack of diligence. Indeed, any accrual date chosen by the *621 court will be imperfect because the record does not reveal the actual value of the condemned property in 1969 or the precise amount of delay caused by Edison's own inaction. The law, however, tolerates an occasional imperfection where, as here, the assessment of damages is difficult and there is a need for a "clear [and] easily administrable rule." (Kirby Forest Indus., Inc. v. United States (1984) 467 U.S. 1, 10, fn. 15, 104 S.Ct. 2187, 81 L.Ed.2d 1.)
Although we believe that awarding interest from the date Edison demanded legal action is fair and equitable, we again stress the limited scope of our decision today. As explained earlier, section 1268.310 defines the proper method for calculating interest in virtually all condemnation cases. Only the peculiar and, we hope, unique circumstances of this case dictate a different result here. With this caveat, we conclude interest on the jury's award should run from July 24, 1994the date Edison first demanded legal action from the State.

DISPOSITION
We affirm in part and reverse in part the judgment of the Court of Appeal and remand the case for further proceedings consistent with this opinion.
GEORGE, C.J., MOSK, J., and BAXTER, J., concur.
Concurring and Dissenting Opinion by WERDEGAR, J.
I concur in the majority opinion insofar as it holds the trial court correctly declined to apply Code of Civil Procedure[1] section 1268.310 literally under the unusual circumstances of this case. To do so would be to give appellant both the appreciation the property enjoyed between the 1969 occupancy date and the 1995 valuation date and the investment value of that inflated award over the same period, a result the statutes do not require and the Legislature could not have intended. I dissent, however, from the majority's determination that interest should be awarded on the 1995 valuation of the property from the date on which appellant first asked the state to initiate eminent domain proceedings.
Rather, while retaining the 1995 valuation of the property for purposes of the principal award, I believe interest should be awarded from 1969 on the 1969 value of the property. By this means, the court would adhere to both section 1268.310, which requires interest from the date of possession, and section 1263.110, subdivision (a), which, as the majority points out, sets the date of valuation as November 16, 1995, the date on which the state made a deposit of probable compensation. (Maj. opn., ante, 94 Cal.Rptr.2d at p. 613, 996 P.2d at 714.) While interest is ordinarily calculated on the actual valuation, here the parties' delay has led to an extraordinarily long period between possession and judgment, such that the legislative intent is more closely effectuated by basing interest on the historical equivalent of that valuationthe property's fair market value at the time of possession. Consequently, although this approach would depart slightly from section 1268.310's command that interest be drawn on the "compensation awarded" (which, pursuant to §§ 1263.310 and 1263.320, presumably refers to the fair market value on the valuation date), it would adhere more closely to the legislative scheme than does the approach of the trial court and the majority opinion in disregarding section 1268.310 entirely.
The majority supports its contrary determination on grounds it remains "true to the legislative intent behind section 1268.310," while avoiding the need for a remand for expert testimony "on the proper amount of compensation." (Maj. opn., ante, 94 Cal.Rptr.2d at pp. 620, 996 P.2d at 721.) In my view, a reluctance to further prolong this litigation, although understandable, is insufficient justification for *622 departing more than absolutely necessary from the express direction of the statute. Section 1268.310 expressly provides that interest shall be calculated from the date of possessionhere, 1969. (See also Redevelopment Agency v. Gilmore (1985) 38 Cal.3d 790, 799, 214 Cal.Rptr. 904, 700 P.2d 794 [interest is constitutionally compelled as reimbursement for lost use of money due but not paid at the time of taking].) Unlike mediators and arbitrators, who may legitimately be motivated to bring the parties' dispute to a swift close and who have leeway in achieving a result roughly just to all parties, our responsibility is different; as this state's highest court, our responsibility is to implement as closely as possible the Legislature's valid statutory directives and, in so doing, to establish useful precedent for litigants and the courts. Neither that the parties in this case may have been dilatory in enforcing their rights nor that the judicial process is time-consuming justifies this court, out of expediency, to avoid its responsibility to the law.
Accordingly, I would remand the matter to the trial court for further proceedings to determine the property's value in 1969 and recalculation of the interest on the basis of that value.
KENNARD, J., and CHIN, J., concur.
NOTES
[*] Kennard, J., and Werdegar, J., dissented.
[1] All further undesignated statutory references are to the Code of Civil Procedure.
[2] In 1984, Edison told the State it might file an inverse condemnation action because of the delays. Edison did not, however, demand legal action from the State as required by the Agreement or follow through on its threat until 1994.
[3] Edison eventually dismissed the inverse condemnation action without prejudice.
[4] Edison contends the trial court had no factual basis for this finding. We disagree. Under the Agreement, Edison had a duty to request the State to initiate eminent domain proceedings if negotiations broke down. Instead of making such a request, Edison allowed negotiations to drag on for 25 years before asserting its rights. During this time, Edison never repudiated the Agreement. Even assuming the State misled Edison, Edison's inexplicable decision to wait 25 years before demanding or initiating legal action, by itself, supports the court's finding.
[5] Section 1255b, as originally enacted in 1959, stated: "If the plaintiff in a condemnation proceeding obtains an order from the court for possession of the property sought to be condemned prior to the trial of the action, then the compensation and damages awarded shall draw lawful interest from the effective date of said order." (Stats. 1959, ch. 282, § 1, p. 2189.)
[6] Section 1255b, as revised in 1961, stated in relevant part:

"(a) The compensation and damages awarded in an eminent domain proceeding shall draw legal interest from the earliest of the following dates:
"(1) The date of the entry of judgment.
"(2) The date that the possession of the property sought to be condemned is taken or the damage thereto occurs.
"(3) The date after which the plaintiff may take possession of the property as stated in an order authorizing the plaintiff to take possession." (Stats. 1961, ch. 1613, § 10, p. 3450.)
[7] According to the letter, the Senate Judiciary Committee recommended passage of former section 1255b because it "will tend to encourage more adequate preliminary deposits at the time the order for possession is obtained and should also tend to expedite final purchase which we believe to be in the public interest once the agency determines the property is needed." (Sen. Grunksy, letter to Governor Edmund G. Brown re Sen. Bill No. 347 (1959 Reg. Sess.), supra, at pp. 1-2.)
[8] We make no judgment as to the accuracy of this estimate and do not suggest that a jury would have valued Edison's property at $7.1 million in 1969. Rather, we offer this rough estimate solely to show that the amount sought by Edison is many magnitudes greater than any return Edison could have received from timely payment by the State.
[9] The State also suggested that Edison's property was worth $25,000 an acre in 1969, which would yield approximately $14 million in interest.
[1] All further statutory citations are to this code.