42 Cal.App.4th 1215 (1996)
50 Cal. Rptr.2d 70
THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent,
v.
OSWALD TANCZOS et al., Defendants and Appellants.
Docket No. G014800.
Court of Appeals of California, Fourth District, Division Three.
February 26, 1996.
*1216 COUNSEL
Barry A. Ross for Defendants and Appellants.
*1217 William M. McMillan, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson, Linda C. Harrel, Gerald A. Costello and Faith I. Mitchell for Plaintiff and Respondent.
OPINION
SONENSHINE, J.
Oswald and Laura Tanczos appeal from a condemnation judgment awarding them $320,000 for property taken by the State of California Department of Transportation (State). They maintain the award would have been significantly greater but for the court's exclusion of their construction plans, offered as evidence of one of the feasible uses of the property.

I
In the 1950's, the Tanczoses built a residence on an oversized lot in Tustin. Eventually they obtained a city building department's approval of construction plans for two or three rental units on the rear of the property. In 1989, before construction commenced, the State initiated a condemnation action relating to freeway expansion.
Unable to agree on the property's fair market value, the parties proceeded to trial. The State made an in limine motion to prohibit the Tanczoses from introducing the approved construction plans. It argued the jury might assume the rental units would be built and impermissibly increase the value of the land on that basis. The Tanczoses maintained the plans were necessary to prove the feasibility of the project. Without this evidence, the Tanczoses said, the State would argue construction of multiple units was "speculative." The court granted the motion, reassuring the Tanczoses the State "surely" would not make such an argument because if it did, the Tanczoses would be allowed to show the jury the plans. The court explained, "[The State] is not going to argue something that I am not going to let you bring in."
The Tanczoses had reason to be concerned. During their case in chief, the Tanczoses' expert testified the property was worth $440,000 because a three-apartment unit could be built on it. On cross-examination the State, pointing to an aerial photograph, asked the expert to demonstrate how the units would fit on the property. He was unable to do so, admitting he had not personally determined whether the property could accommodate the units. Indeed, after he answered further questions posed by the State about the size of the residence and the building setback requirements, it appeared as though space limitations prohibited the construction of the additional units.
*1218 Not surprisingly, the Tanczoses asked to introduce the approved plans for the limited purpose of showing the feasibility of the construction. The court denied this request, stating, "You don't have to submit the plans[,] all you have to do is have somebody testify [three units could have fit]." However, the Tanczoses' only remaining expert, a senior planner for the city, could not say if there was enough room on the property for the construction of three additional units. He could only testify the zoning permitted such use. The State's expert then testified the property was worth no more than $285,000 because the land could accommodate the addition of only one more unit.
During closing argument, the State highlighted the Tanczoses' experts' failure to present any "analytical data" to show how three units could fit on the property. The Tanczoses immediately sought to reopen to introduce the plans. The trial court denied the motion, telling the Tanczoses to simply "go out there and make your best argument."

II
(1) The condemning agency must pay the owner "just compensation" when property is taken by eminent domain, i.e., it must "`"`reimburse the owner for the property interest taken and... place the owner in as good a position pecuniarily as if the property had not been taken.' ..."'" (County of San Diego v. Rancho Vista Del Mar, Inc. (1993) 16 Cal. App.4th 1046, 1058 [20 Cal. Rptr.2d 675], internal citation omitted.) "[P]roperty taken is valued based on the highest and best use for which it is geographically and economically adaptable." (Id. at p. 1058.) The owner is entitled to the land's fair market value in light of "all of the uses and purposes for which the property is reasonably adaptable and available." (Code Civ. Proc., §§ 1263.310 & 1263.320, italics added.)
Whether construction plans are admissible depends on the purpose for which they are offered. If introduced to show a specific land use they are inadmissible because fair market value is based on all reasonable available uses. (County of San Diego v. Rancho Vista Del Mar, Inc., supra, 16 Cal. App.4th at pp. 1058-1059.) Conversely, they are admissible when offered merely as an illustration of one of the uses to which the property is adapted and the evidence is expressly limited by the court to such object. (People v. La Macchia (1953) 41 Cal.2d 738 [264 P.2d 15], overruled on other grounds in County of Los Angeles v. Faus (1957) 48 Cal.2d 672, 680 *1219 [312 P.2d 680]; see 8 Witkin, Summary of Cal. Law (9th ed. 1987) Constitutional Law, § 1018, p. 581 ["[E]vidence of a proposed [plan] may be admitted ... to show ... the plan was feasible and therefore should be considered in fixing market value"].)[1]
(2) The State contends the plans were properly excluded because they were offered to establish a specific use. The record belies this contention. From the inception, the Tanczoses maintained construction of the units was merely one of the uses to which the property was adaptable and offered the plans to establish feasibility. The court, in granting the in limine motion, assured the Tanczoses they would not need the plans to prove their case because feasibility was not at issue. We need not decide whether this ruling was error because thereafter the court permitted the State to put feasibility at issue.
Indeed, feasibility became the central issue. The State's entire focus when cross-examining the Tanczoses' expert was his inability to demonstrate how three units could fit on the lot. Then its own expert unequivocally testified, "The placement of the residence on the lot does not allow for three additional units on the rear of the property." And in closing, the State argued the Tanczoses had no analytical data to prove their theory of feasible use, i.e., the construction of three units. Without evidence of the approved plans, the Tanczoses were unable to defend against the only real matter at issue.
The State asserts even if the plans were relevant and admissible, the court correctly excluded them because their prejudicial effect outweighed their probative value. (Evid. Code, § 352.) People v. La Macchia, supra, 41 Cal.2d 738 is instructive. There the trial court permitted the property owners to testify to their intended building plans. The Supreme Court, in affirming the trial court's decision, noted the general rule disallowed such testimony because of its prejudicial effect. Damages must be "measured by the market value of the land ... not ... for a special purpose, but ... in view of all the purposes to which it is naturally adapted." (Id. at p. 751.) It reasoned however "under certain circumstances evidence that a proposed use would result in a profit is admissible, `not for the purpose of enhancing damages by showing the loss to the owner of a particular plan of operation, but to show that such proposed plan is a feasible plan and should be considered in fixing market value.' [Citations.]" (Ibid., italics added.) It noted any danger of the *1220 jury misusing the evidence was ameliorated by a limiting instruction. (Id. at p. 752.)[2]
The court erred in denying the Tanczoses' repeated requests to introduce their approved plans and this error requires a reversal of the judgment because it resulted in a miscarriage of justice. (Cal. Const., art. IV, § 13.) Without this evidence, the Tanczoses could neither defend their position nor challenge the State's. "`"`[A]fter examination of the entire cause, including the evidence,' [we are] of the `opinion' that it is reasonably probable a result more favorable to the [Tanczoses] would have been reached in the absence of error."' [Citation.]" (Pool v. City of Oakland (1986) 42 Cal.3d 1051, 1069 [232 Cal. Rptr. 528, 728 P.2d 1163].)
The judgment is reversed; the case is remanded for a new trial in conformity with this opinion. The Tanczoses shall recover their costs on appeal.
Crosby, Acting P.J., and Wallin, J., concurred.
A petition for a rehearing was denied March 18, 1996.
NOTES
[1] The State's reliance on People ex rel. Dept. Pub. Wks. v. Princess Park Estates, Inc. (1969) 270 Cal. App.2d 876 [76 Cal. Rptr. 120] is inapt because there the plans were offered for the purpose of enhancing severance damages.
[2] In La Macchia the jury was instructed: "`Whatever the purpose the Defendants had in connection with the future use of the property, can add nothing to its market value. The fact that this purpose is defeated by condemnation, however much a disappointment, is not a matter of compensation. A use existing or contemplated on property is distinct from the market value of the property itself and is not the conclusive basis for fixing such market value, and is not to be considered as determining the value of the land. Value in use is not to be considered by you as determining the market value of the property. A plan which Defendants may or may not have had for the improvement of the property adds nothing to the market value. The fact that a plan for the improvement, if any, was affected by condemnation, however much a disappointment, is not a matter of compensation.'" (People v. La Macchia, supra, 41 Cal.2d at p. 752.) The reviewing court noted, "It must be assumed that the jury understood such clear and unambiguous language and correctly applied the instructions to the evidence. [Citations.]" (Ibid.)