[No. H022553. Sixth Dist. Apr. 16, 2002.]

SARATOGA FIRE PROTECTION DISTRICT, Plaintiff and Respondent,
v.
W. CHARLES HACKETT, Individually and as Trustee, etc., Defendant
and Appellant.

## COUNSEL

Ackerman & Kevorkian, Michael G. Ackerman and Kevin B. Kevorkian for Defendant and Appellant.

Matteoni, Saxe & O'Laughlin, Barton G. Hechtman and Norman E. Matteoni for Plaintiff and Respondent.

## OPINION

**PREMO, Acting P. J.**—Defendant W. Charles Hackett[1] appeals judgment in an eminent domain proceeding brought by plaintiff Saratoga Fire Protection District in which defendant was not allowed to produce evidence that his Saratoga office building was worth $3.2 million at the time of trial.

---

[1]Defendants were W. Charles Hackett, individually and as the trustee of the W. Charles Hackett Declaration of Trust Agreement; his former wife Zaida P. Hackett, who alleged a community property or other interest in the property in *Hackett v. Hackett* (Super. Ct. Santa Clara County, 1993, No. FLO-34792) and who filed a lis pendens against the property; Comerica Bank California, the mortgage holder; Contempo Realty, Inc., lessee of the property; Charles & Charles Partnership, believed by plaintiff to be the lessor of the property; and the County of Santa Clara which held a tax lien against the property. Before trial in November 2000, Contempo Realty filed a disclaimer of interest. Only W. Charles Hackett individually and as trustee filed a notice of appeal. We will use the singular "defendant" in this opinion.

Defendant contends California's eminent domain law is unconstitutional as applied to him because the mandatory use of the date the complaint was filed as the valuation date denied him "just compensation" by depriving him of the $1.2 million he claims the value of the property increased in the year between the filing of the complaint and the actual taking of the property. He also contends that the trial court erred in denying his motion for a new trial.

FACTS

Plaintiff brought an action in eminent domain to condemn defendant's office building and parking lots that stood on three parcels at 20473 Saratoga-Los Gatos Road in Saratoga. The building was across a small parking lot from plaintiff's existing fire station and plaintiff wanted the property to use as a firefighters' residence, offices for public safety personnel, public parking, and other public uses.

The parties stipulated that the property was worth $2 million on December 17, 1999, the date the complaint was filed, which was the statutorily set valuation date for actions brought to trial within one year (Code Civ. Proc., § 1263.120).[2] However, before the start of trial on November 13, 2000, defendant obtained appraisals stating that as of October 5, 2000, the property had a fair market value of $3,049,412, and as of October 12, 2000, the fair market value was $3.2 million.

Before the trial started, defendant declared in chambers that pursuant to *England v. Medical Examiners* (1964) 375 U.S. 411 [84 S.Ct. 461, 11 L.Ed.2d 440], he was reserving the issue of the unconstitutionality of the statute for hearing in the action for declaratory relief he had filed on November 9, 2000, in the United States District Court for the Northern District of California (*Hackett v. Saratoga Fire Protection Dist.*, No. C00-21138 PVT).[3] When trial started, the court granted plaintiff's motion to exclude any evidence of value other than that determined as of December 17, 1999. Thereafter, the superior court tried the issue whether the taking was necessary, an affirmative defense asserted by defendant. The court granted nonsuit as to each of them. Defendant requested a brief stay of execution on the judgment to take title to the property to allow him sufficient time to file a petition for a temporary restraining order with the federal court and a petition for a writ of mandate with this court. The parties agreed that they would return on December 4 for a request for judgment by plaintiff and that the judgment would not be entered before December 4.

---

[2] Further statutory references are to the Code of Civil Procedure unless otherwise stated.

[3] In federal court, Hackett was the plaintiff and the district was the defendant. In this opinion, for the sake of clarity, we will refer to Hackett as defendant and the district as plaintiff even when referring to Hackett's federal case.

On November 13, defendant filed a petition for writ of mandate with this court (*Hackett v. Superior Court* (Nov. 13, 2000, H022235) [nonpub. opn.]), which we denied the next day, November 14, 2000. On December 4, the trial court granted judgment to plaintiff. Plaintiff deposited $2 million with the court, and defendant moved for a new trial on the grounds of accident and surprise and errors of law occurring at trial. In supplemental points and authorities, defendant later claimed the additional ground that the "decision of the trial court was against the law." Meanwhile, on December 11, 2000, plaintiff took possession of the property and the federal court denied defendant's application for a temporary restraining order. (*Hackett v. Saratoga Fire Protection Dist.*, *supra*, No. C00-21138 PVT.)[4] Plaintiff took title as the parties agreed on January 4, 2001. On January 24, 2001, the trial court denied the motion for a new trial. This appeal ensued.

## ISSUES ON APPEAL

Defendant complains that California's eminent domain laws are unconstitutional as applied to him because they do not provide for "just compensation" in situations such as this where property substantially increases in value before trial. Defendant also contends that the trial court erred in denying his motion for a new trial.

## CONSTITUTIONALITY

Defendant states that "under California's statutory scheme, the landowner bears all risk of loss during the pendency of the action, and the government receives the benefit of all appreciation in value without being required to compensate the owner for that appreciation. And, . . . if the government changes its mind because, for example, the property has decreased in value due to market conditions, it may do so with impunity.[5] [¶] . . . [¶] In this case, [defendant was] forced to contribute[] over one-third of the value of [his] property at the time of its taking. [Plaintiff] cannot deny this fact. [It] simply dismiss[es] this violation of [defendant's] constitutional right to just compensation by stating that this has been the rule for over one hundred years. That does not address the problem. It simply ignores it." (Original underscoring.)

When the trial court granted plaintiff's motion to exclude the $3 million appraisals of the property, the judge said: "I feel constrained to grant that

---

[4]This court took judicial notice of defendant's complaint for declaratory relief in the federal district court and the court's July 2, 2001, order staying the action pending final resolution of the state court proceedings. Pursuant to that order, defendant will have an opportunity to pursue his Fifth Amendment issue after this state court action is completed.

[5]Section 1268.510; *Los Angeles Unified School Dist. v. Trump Wilshire Associates* (1996) 42 Cal.App.4th 1682, 1688 [50 Cal.Rptr.2d 229].

motion. The statute is so clear; the history is so long. Some of the cases call this settled law. I feel that I have to do that. [¶] Now, having said that, there seems to be some unfairness here, to be candid, in this market with the way things are working. And it certainly wouldn't be unreasonable for the Legislature to revisit this in terms of shortening the time period or changing the date of valuation under these circumstances. [¶] Particularly strikes me as unfair that if there's a loss, that the landowner bears the loss; but if there's an appreciation in value, the landowner doesn't benefit from that. And I think that's one-sided. [¶] And maybe there's a good reason for it to be one-sided. I'm not sure that I've heard it. But it seems to me that either the *Maxwell* case is wrong or the law should be changed or something in that regard. [¶] But the law is the law, as I understand it, and I'm granting your motion to exclude certain evidence . . . on that basis."[6]

██ "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation." (Cal. Const., art. I, § 19; see also U.S. Const., 5th & 14th Amends.) "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, [citation], prohibits the government from taking private property for public use without just compensation." (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 617 [121 S.Ct. 2448, 2457, 150 L.Ed.2d 592].)

The California Legislature provided for eminent domain proceedings in section 1230.010 et seq. Once a governmental entity has determined that it wishes to take property for public use, it files an action in state court (§ 1250.110) and records a lis pendens on the property (§ 1250.150). At any time after the complaint is filed until 30 days after the judgment is entered, the government may avoid acquiring the property by filing with the court a written "Notice of Abandonment." (§ 1268.510.) Under certain circumstances, the court may compel the government to purchase the property but " ' " '[u]nless the condemnor has done some additional act which would estop him, he can abandon with near impunity.' " ' " (*Los Angeles Unified School Dist. v. Trump Wilshire Associates, supra*, 42 Cal.App.4th at p. 1688.)

██ California law provides three dates for valuation of the property taken: (1) the date of the commencement of the action if brought to trial

---

[6]*Redevelopment Agency v. Maxwell* (1961) 193 Cal.App.2d 414 [14 Cal.Rptr. 170, 89 A.L.R.2d 1070].

within one year (§ 1263.120); (2) the date the "probable compensation" is deposited in court (§ 1263.110); or (3) the date of the commencement of trial if the matter is not brought to trial within one year of the date the action was filed unless the delay was caused by the defendant, in which case the date of valuation is the date of commencement of the proceeding (§ 1263.130).

Defendant states, "Here, trial was commenced within one year, so section 1263.120 was deemed to apply. No other valuation date is allowed under California law regardless of the circumstances. [¶] These sections, and section 1263.120 in particular, have been deemed by California courts to be 'procedural' in nature and not of constitutional dimension. . . .[7] Every California court called upon to review the constitutionality of these provisions has repeated the mantra, without analysis, that these arbitrary dates of valuation are constitutional. . . .[8] Thus, under California law, regardless of the amount of appreciation in value from the date of the filing of the lawsuit, as long as the matter is brought to trial within one year, the date of commencement is the date of valuation, regardless of the ability of the property owner to replace the seized property with the amount eventually paid, and regardless of the fair market value of the property on the date that title transfers and the government takes possession." (Original underscoring.)

"The purpose of our eminent domain statutes is obvious. The Legislature undoubtedly envisioned speedy acquisitions and timely compensation." (*People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791, 794 [94 Cal.Rptr.2d 609, 996 P.2d 711] (*Edison*).) ▮ The compensation to which the owner is entitled is "just compensation." " '[J]ust' compensation is the 'full and perfect' monetary equivalent of the fair market value of the land paid at the time the taking occurred. [Citation.]" (*Gilmore, supra,* 38 Cal.3d at p. 801.) "[T]he policy underlying the just compensation clause is to ensure that the owner of damaged [or taken] property is not forced to ' " 'contribute more than his proper share to the public undertaking' " '; in other words, the clause aims ' " 'to distribute throughout the community the loss inflicted upon the individual by the

---

[7]Defendant cites *People v. Murata* (1960) 55 Cal.2d 1, 5-6 [9 Cal.Rptr. 601, 357 P.2d 833]; *Cal. Southern R.R. Co. v. Kimball* (1882) 61 Cal. 90, 91-92; *Tehama County v. Bryan* (1885) 68 Cal. 57, 65 [8 P. 673].

[8]Defendant cites *People ex rel. Dept. Pub. Wks. v. Simon Newman Co.* (1974) 37 Cal.App.3d 398, 404 [112 Cal.Rptr. 298]; *State of California ex rel. Dept. Water Resources v. Clark* (1973) 33 Cal.App.3d 463, 467-468 [109 Cal.Rptr. 39]; *County of Los Angeles v. Lorbeer* (1958) 158 Cal.App.2d 804, 816-817 [323 P.2d 542]; *County of Los Angeles v. Hoe* (1955) 138 Cal.App.2d 74, 79-80 [291 P.2d 98]; *City of Los Angeles v. Tower* (1949) 90 Cal.App.2d 869, 873-874 [204 P.2d 395]; but see *Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 801, fn. 12 [214 Cal.Rptr. 904, 700 P.2d 794] (*Gilmore*).

making of the public improvements'. . . ." ' [Citations.]" (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 715-716 [66 Cal.Rptr.2d 630, 941 P.2d 809] (*Continental*).) The United States Supreme Court has stated, " '[t]he just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public.' . . . [T]he high court [also] said, '[t]he fundamental right guaranteed by the Fourteenth Amendment is that the owner shall not be deprived of the market value of his property under a rule of law which makes it impossible for him to obtain just compensation. . . .' " (*Id.* at p. 715, quoting *Bauman v. Ross* (1897) 167 U.S. 548, 574 [17 S.Ct. 966, 976, 42 L.Ed. 270] and *McCoy v. Union Elevated R.R. Co.* (1918) 247 U.S. 354, 365-366 [38 S.Ct. 504, 507-508, 62 L.Ed. 1156].)

■ The measure of compensation provided by the eminent domain law is the "fair market value" (§ 1263.310) defined as the highest price on the date of valuation that would be agreed to by a willing seller, under no obligation nor necessity to sell, and a willing buyer, under no similar obligation or necessity to buy, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available. (§ 1263.320, subd. (a); *Merced Irrigation Dist. v. Woolstenhulme* (1971) 4 Cal.3d 478, 488 [93 Cal.Rptr. 833, 483 P.2d 1].) California state law does provide for some adjustments to the value of the property. If any improvements to the property are removed or destroyed during the pendency of the action, those improvements are not included in the valuation of the property. (§ 1263.230.) But if improvements are made to the property during the pendency of the action, the government need not compensate the owner for them unless the improvements were required to be made by a public utility to its utility system, the government consented in writing, the improvement was authorized by a court order upon noticed motion (§ 1263.240), or made in good faith under a preexisting contractual obligation. (*City of Santa Barbara v. Petras* (1971) 21 Cal.App.3d 506 [98 Cal.Rptr. 635].)

"[T]he primary purpose of the Legislature in enacting section [1263.120, formerly section 1249] was to protect the parties against fluctuations in the market value of real property." (*Redevelopment Agency v. Maxwell, supra,* 193 Cal.App.2d at p. 418.) ■ In our case, the parties agreed that between the date of valuation and the date of trial, the value of the property increased; however, they did not agree on the dollar amount of the increase. Nevertheless, plaintiff argued strenuously, and the trial court agreed, that the

court was "constrained" to apply section 1263.120 even though the court felt that to do so was somewhat unfair.

Both the United States and California Supreme Courts have held otherwise. The United States Supreme Court has stated, "[h]owever reasonable it may be to designate the date of trial as the date of valuation, if the result of that approach is to provide the owner substantially less than the fair market value of his property on the date the United States tenders payment, it violates the Fifth Amendment." (*Kirby Forest Industries, Inc. v. United States* (1984) 467 U.S. 1, 17 [104 S.Ct. 2187, 2198, 81 L.Ed.2d 1] (*Kirby*).) The California Supreme Court reflected that the *Kirby* court "recognized that any substantial increase in fair market value between the dates of valuation and taking must be paid in order to provide 'just compensation.' Thus, the condemnee in a federal proceeding may move, after the taking, to amend the award in order to litigate the issue of interim increase in fair market value. [Citation.]" (*Gilmore, supra,* 38 Cal.3d at p. 799, fn. 9.) Recently, the Court of Appeal for the Second District stated, "[a]t least since *Gilmore* it has been the law in California that state statutory provisions must fail if they conflict with this constitutional requirement. 'This element of "just compensation" is constitutionally required and "cannot be made to depend upon state statutory provisions." ' [Citation.]" (*Community Redevelopment Agency v. Force Electronics* (1997) 55 Cal.App.4th 622, 633 [64 Cal.Rptr.2d 209].)

Historically, in *Citizens Utilities Co. v. Superior Court* (1963) 59 Cal.2d 805 [31 Cal.Rptr. 316, 382 P.2d 356], the California Supreme Court refused to apply section 1249, the predecessor to section 1263.120 challenged here, to the valuation of a public utility system that did not compensate the utility for improvements to the system which were required to be made by law. (As stated, *ante,* the exception was codified in 1975 in section 1263.240 (Stats. 1975, ch. 1275, § 2, p. 3450, operative July 1, 1976).) The court stated, "[i]t has been held that section 1249 is not inflexible and does not always apply, even in private condemnations. In *Redevelopment Agency v. Maxwell*[, *supra,*] 193 Cal.App.2d 414 . . . , it was held that, in spite of the mandate of the section, if the property sought to be condemned were destroyed by fire after summons issued, that fact should be considered by the trier of fact in determination of the award. If involuntary destruction of the property after issuance of summons may be considered in diminution of an award of compensation, in spite of the language of section 1249, it follows that involuntary betterment of the property may and should be considered in assessing the award if the improvements are of use and benefit and add to the value of the property sought to be condemned. [Citation.] [¶] Thus, the trial court held, and held properly, that the problem could be solved by simply devising a procedure whereby the value of petitioner's water system

would be assessed as of the date of trial rather than the date of summons. Petitioner challenges the power of the trial court to so improvise. The trial court had such power. The provision of the Constitution compelling the payment of just compensation for a public taking of property (Cal. Const., art I, § 14 [(now § 19)]) is self-executing. Since this is so it has consistently been held, in inverse condemnation cases, that inherent power is reposed in the trial court to provide for the assessment of just compensation in situations not within the purview of existing statutory provisions. [Citations.] The trial court, in the instant case, was empowered to devise a procedure whereby the value of petitioner's water system could be justly and constitutionally assessed. This it did by providing that in the case of petitioner the condemned property should be assessed not as of the date of the summons, but as of the date of trial. This was a proper exercise of the inherent power of the trial court. It certainly protected petitioner for any increased value to its properties caused by involuntary improvements made after summons and up to the date of trial or of judgment. Inasmuch as the Legislature has failed to provide a procedure to cover the contingency involved, pursuant to its inherent powers the court had the power to devise a proper procedure." (*Id.* at pp. 811-812.)

Similarly, in an inverse condemnation action against a city to recover subsidence damage to property, an appeals court approved the trial court's instruction to the jury to assess damages based on the property's fair market value in 1981, the date of commencement of trial, rather than 1977, the date of injury, in view of the appreciation of the property during the interval and plaintiffs' prompt pursuit of their available remedies. (*Leaf v. City of San Mateo* (1984) 150 Cal.App.3d 1184, 1190-1191 [198 Cal.Rptr. 447], overruled on other grounds in *Trope v. Katz* (1995) 11 Cal.4th 274, 286 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

The California Supreme Court has held that a court has the power to order a condemner to pay market rate interest rather than the statutory rate of interest in order to comply with the constitutional requirement of "just compensation." In *Gilmore*, a public agency that took possession of property it condemned before the condemnation price was set or fully paid (§ 1255.010 et seq.), was required to pay interest on the balance due at the prevailing market rate to provide constitutional just compensation and not at the legal rate provided in section 1268.310. The court stated: "a statutory interest ceiling cannot prevail where it falls short of constitutional 'just compensation' . . . . When the delay occurs during times of inflationary market interest rates which substantially exceed the statutory rate, application of the lower statutory limit denies the condemnee 'the full equivalent of the [property's] value . . . at the time of the taking paid contemporaneously

with the taking.' [Citation.] [¶] Many courts have recognized that, while the statutory rate of interest may apply if it is constitutionally adequate, ultimate determination of the rate of interest required for 'just compensation' is a judicial function. An adequate rate, these cases hold, must reflect conditions in the usual interest markets. [Citations.]" (*Gilmore*, *supra*, 38 Cal.3d at p. 797.)

Similarly, our Supreme Court recently declined to apply section 1268.310 which requires interest on compensation to be computed as of the date the state takes possession of the property in a case in which the state took possession of the property over 30 years before. In that case, the condemnee agreed the state could take possession of the property in 1969. The parties desultorily negotiated the price in the following years, but no compensation was paid for over 30 years until the condemnee filed an inverse condemnation action demanding compensation. (*Edison*, *supra*, 22 Cal.4th at pp. 795-796.)

In finding that section 1268.310 should not control, the court stated, "we believe this case presents the rare situation where the literal application of a statute contravenes the legislative intent behind its enactment and extends its reach far beyond those situations contemplated by the Legislature. [¶] Ordinarily, the literal meaning of the words of a statute governs. [Citation.] We will not, however, apply the literal language of a statute 'when to do so would evidently carry the operation of the enactment far beyond the legislative intent and thereby make its provisions apply to transactions never contemplated by the legislative body.' [Citation.] 'A code may strive for comprehensiveness, but exceptional situations will arise.' [Citation.] As a result, we may decline to apply a statute in those rare cases where 'it is obvious that the Legislature cannot have intended the statute to apply.' [Citation.] [¶] These principles of statutory construction are especially germane in the eminent domain context because 'the amount to be paid for property taken by the government is, under the Constitution, a matter for the courts rather than the Legislature . . . .' [Citation.] Thus, courts have eschewed a literal application of our eminent domain statutes if such an application 'ignores' the purpose behind the statutes. [Citation.] Courts have also found one of these statutes inapplicable where the Legislature did not anticipate the particular facts of the case and undoubtedly did not intend for the statute to apply there. [Citation.] Finally, courts have refused to apply our eminent domain statutes where their application would give the condemnee a ' "windfall" ' not intended by the Legislature. [Citations.]" (*Edison*, *supra*, 22 Cal.4th at pp. 798-799.)

Applying these principles in our case, the constitutional requirement of "just compensation" requires the payment of fair market value to defendant.

Defendant was precluded from placing before the court evidence of unusual circumstances which, if believed by the trier of fact, would make it unjust to apply section 1263.120 to defendant's award. Defendant should have been allowed to try to establish that there was a substantial increase in the value of his property between December 1999 and October 2000. There was no indication that the increase in value of defendant's property was due to bad faith improvements by defendant or to elements of value that the government created. (See *United States v. Fuller* (1973) 409 U.S. 488, 492 [93 S.Ct. 801, 35 L.Ed.2d 16] (*Fuller*).) Consequently, the court should have admitted the evidence. Just as the rules are not to be applied to give the condemnee a "windfall" (*Edison, supra*, 22 Cal.4th at p. 799), they should not be applied to give the government a windfall. (*Continental, supra*, 16 Cal.4th at p. 715.) Thus, section 1263.120—"like 'all condemnation law, procedure and practice[—]is but a means to the constitutional end of just compensation to the involuntary seller, the property owner.' [Citation.]" (*Edison, supra*, 22 Cal.4th at p. 800.)

"In the absence of an applicable statute, equity must 'operate' [citation], and courts must devise their own procedure for ensuring just compensation [citation]." (*Edison, supra*, 22 Cal.4th at p. 803.) Under these circumstances, the trial court had the inherent power " 'to adopt working rules in order to do substantial justice in eminent domain proceedings.' [Citation.]" (*Fuller, supra*, 409 U.S. at p. 492 [93 S.Ct. at p. 804].)

The trial court's error in excluding defendant's evidence of the fair market value of the property at the time of trial "requires a reversal of the judgment because it resulted in a miscarriage of justice. (Cal. Const., art. IV, § 13.) Without this evidence, [defendant] could neither defend [his] position nor challenge the State's. ' " ' "[A]fter examination of the entire cause, including the evidence," [we are] of the "opinion" that it is reasonably probable a result more favorable to [defendant] would have been reached in the absence of error.' " [Citation.]' [Citation.]" (*People ex rel. Dept. of Transportation v. Tanczos* (1996) 42 Cal.App.4th 1215, 1220 [50 Cal.Rptr.2d 70].)

## DISPOSITION

The judgment is reversed. Costs to defendant.

Elia, J., and Wunderlich, J., concurred.

A petition for a rehearing was denied May 14, 2002, and the opinion was modified to read as printed above.