[No. E041660. Fourth Dist., Div. Two. Nov. 19, 2007.]

EASTERN MUNICIPAL WATER DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
MASSOUD TAJIK et al., Real Parties in Interest.

## COUNSEL

Redwine and Sherrill and Robert T. Andersen for Petitioner.

No appearance for Respondent.

Rutan & Tucker and David B. Cosgrove for Real Parties in Interest.

## OPINION

## McKINSTER, J.—

### INTRODUCTION

This is an eminent domain action in which petitioner Eastern Municipal Water District (district) seeks to acquire an easement across property owned by real parties in interest[1] for the purpose of laying an underground pipeline. At the time of filing, the property was vacant land. The issue before us is whether the trial court properly determined that the "valuation date" for the property should be changed from the date on which a deposit of "probable compensation" was made by the district to the date of trial. (See Code Civ. Proc., §§ 1263.110, 1263.120, 1263.130.)[2] We conclude that the ruling was erroneous and that the proper valuation date is the date of deposit. Accordingly, we will grant the petition.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

The complaint was filed on October 12, 2004, and on the same date, district deposited the sum of $50,800 as "probable compensation" for the taking. This sum represented the current appraisal of the easement and expected severance damages by a qualified appraiser hired by the district. District also sought immediate possession of the property, proposing to give the statutory 30-day notice of the order for possession (the "quick take" procedure). (§ 1255.450, subd. (b).)[3] Owners objected, asserting that they needed additional time because one of the owners had recently died.[4] Nevertheless, the order was signed. Formal notice of the deposit was given to owners on March 15, 2005.

As trial approached in 2006, owners filed a motion for an increase in the amount of probable compensation and for a change in the valuation date. At

---

[1] As the owner, real parties in interest are numerous and do not share a surname, we will refer to them as "owners."

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] Subsequent to this action, the statute was amended to require only 10 days' notice, or 30 days if the property was occupied by a dwelling, farm, or business. At the time, 30 days was the default notice and 90 days was required in the special circumstances stated.

[4] The notice provisions are obviously designed to give an owner time to make arrangements, especially if he or she will be required to vacate the premises. The recently deceased status of an owner does not appear relevant to this issue.

that time, as owners noted, the parties' respective appraisers were "relatively close on valuation," but differed drastically on severance damages. The district's new appraiser estimated the value of the easement at $84,000, with no severance damages; owners' appraiser valued the easement at $86,346 and also assessed severance damages at $398,028.[5]

On the critical legal issue, owners argued that because the original deposit was inadequate, and the real estate market was rising, using the date of deposit as the valuation date would be constitutionally improper because it would not give them "just compensation" for the property taken. With respect to the motion for increase in the deposit, the trial court "resolved" the discrepancy between the two appraisals by fixing the required total deposit at a point midway between the two appraisals. It also granted owners' motion to change the date of valuation to what was then the projected date of trial, April 16, 2007.[6]

District filed this petition, seeking a writ of mandate directing the trial court to reinstate the date of initial deposit as the valuation date. We issued an order to show cause, and now grant the petition.

## DISCUSSION

■ The constitutional linchpin of the government's power to condemn private property for a public purpose is the requirement that "just compensation" be paid to the owner. (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 796 [214 Cal.Rptr. 904, 700 P.2d 794].) This means that " 'the owner is constitutionally entitled [to] the *full and perfect* equivalent of the property taken.' " (*Id.* at pp. 796–797.)

■ Two provisions in the Eminent Domain Law (§ 1230.010 et seq.) set out the basic method for determining the date on which taken property is to be valued for the purpose of fixing compensation. Section 1263.120 provides that "[i]f the issue of compensation is brought to trial within one year after commencement of the proceeding, the date of valuation is the date of

---

[5] Owners' appraiser stated that the underlying pipeline and the easement would require a major reconfiguration of a proposed development of the property, leading to either fewer buildable lots or less desirable lots. He also believed that aboveground signs indicating that the pipeline carried "non-potable water" would create a damaging "stigma." District's appraiser took the position that although no structures could be placed on the easement, the property could still be divided into more salable lots than were permitted by the applicable zoning, so that there would be no severance damage.

[6] It was agreed by owners that no further changes in the valuation date would be sought.

commencement of the proceeding." However, in recognition of the fact that property values can fluctuate over time, if the matter is not brought to trial within one year after commencement of the proceeding, section 1263.130 moves the valuation date to the date of trial. Furthermore, even these rules do not control if the result would be to deprive the owner of just compensation; for example, if "unusual circumstances" affecting value occur after the commencement of an eminent domain proceeding, an owner may be constitutionally entitled to demand a later date of valuation even if trial is set within one year. (See *Saratoga Fire Protection Dist. v. Hackett* (2002) 97 Cal.App.4th 895, 905–906 [118 Cal.Rptr.2d 696] (*Saratoga*).)

 It is important to note that *Saratoga, supra,* 97 Cal.App.4th 895, was a case involving the "normal" process of condemnation in which the "quick take" procedure was not used by the condemning agency. (See *Mt. San Jacinto Community College Dist. v. Superior Court* (2007) 40 Cal.4th 648, 661–662 [54 Cal.Rptr.3d 752, 151 P.3d 1166] (*Mt. San Jacinto*), distinguishing *Saratoga, supra,* 97 Cal.App.4th 895, from the "quick take" situation.) Under the latter procedure, if the condemning agency elects to make a deposit of probable compensation in order to obtain immediate possession of the property, the Legislature has provided for the use of a third date of valuation. In such a case, section 1263.110, subdivision (a), establishes the date of deposit as the date of valuation.

The logic behind this is simple. When an owner has the option of withdrawing funds to the value of the property, he or she is no longer at the mercy of a shifting, unpredictable market. If the owner thinks the market is rising, he or she can use the funds to purchase a new property; if the market is falling, the owner can simply bank the money or invest it otherwise. (See *Mt. San Jacinto, supra,* 40 Cal.4th at p. 658.) The procedure is expressly permitted under the state Constitution (Cal. Const., art. I, § 19) and has otherwise been held constitutionally adequate. (*Mt. San Jacinto, supra,* at pp. 665–666.) Indeed, the Constitution does not even require that payment be made *before* property is taken, so long as adequate provision is made to secure the eventual payment of full compensation. (See *Cherokee Nation v. Kansas Railway Co.* (1890) 135 U.S. 641, 659 [34 L.Ed. 295, 10 S.Ct. 965]; *East Tennessee Natural Gas Co. v. Sage* (4th Cir. 2004) 361 F.3d 808, 824.)

It is true, obviously, that the adequacy of the "quick take" procedure depends in large part on the sufficiency of the deposit, and this brings us to the issues in this case. Owners take the position that because the district did

not deposit "probable" compensation, section 1263.110, subdivision (a), does not apply. We will assume arguendo that district's initial deposit was inadequate. Nevertheless, that fact would not operate to alter the valuation date.

First, we note that the statute requires the deposit of "probable" compensation, implicitly acknowledging that property appraisal is not an exact science. A closer question might be presented if there were evidence that district's initial deposit had been made in bad faith;[7] but, certainly on the record before us, owners had an adequate remedy for any deficiency—that is, by moving (as they did) for an increase. The fact that the initial deposit may well have been inadequate does not affect the statutory scheme.

The first case to be discussed is *City of Santa Clarita v. NTS Technical Systems* (2006) 137 Cal.App.4th 264 [40 Cal.Rptr.3d 244] (*Santa Clarita*). In that case, the condemner originally deposited about $48,000 based on its initial appraisal of the property. Over three years later, having reviewed a new appraisal, the condemner deposited approximately $32,000 more. At trial, the trial court rejected the owner's request to change the valuation date and the Court of Appeal affirmed. The court noted that under section 1255.030, the owner could have moved for an increase in the deposit and, if the motion had been granted and the condemner failed to make the deposit, the owner could demand dismissal of the proceeding. Given also that a condemning plaintiff may voluntarily increase a deposit without motion, the court concluded that there was no reason to infer that any additional deposit caused the valuation date to shift.[8] Distinguishing *Saratoga, supra*, 97 Cal.App.4th 895, as a "straight condemnation," the court held that using the initial date of deposit as the valuation date would result in "just compensation" to the owner. (*Santa Clarita, supra*, 137 Cal.App.4th at pp. 272–273.) Thus, that court implicitly felt that the owner's opportunity to seek an increase in the deposit adequately protected his right to "just compensation."

Next, the use of the date of deposit as the valuation date was confirmed most recently by the Supreme Court in *Mt. San Jacinto, supra*, 40 Cal.4th 648. The twist in that case was that the owner refused to withdraw the

---

[7] However, owners do not rely on any element of bad faith in the making of the deposit; they argue simply that the condemning agency is obliged to accurately determine probable compensation or suffer the consequences. As will be seen, we do not agree.

[8] In *Santa Clarita, supra*, 137 Cal.App.4th 264, the judgment after trial was virtually identical to the original deposit, so the additional deposit proved unnecessary. However, the opinion makes little of this point.

deposit[9] because it wished to challenge the condemner's right to take. Section 1255.260 provides that "[i]f any portion of the money deposited pursuant to this chapter is withdrawn, the receipt of any such money shall constitute a waiver by operation of law of all claims and defenses . . . except a claim for greater compensation." This includes the right to contest the condemner's right to take. (*Clayton v. Superior Court* (1998) 67 Cal.App.4th 28, 33 [78 Cal.Rptr.2d 750].) The owner in *Mt. San Jacinto* argued that because it was "forced" to leave the funds on deposit in order to preserve its right to challenge the taking, it would not receive "just compensation" if the property were valued as of a date when it was unable to withdraw the money. (*Mt. San Jacinto, supra*, 40 Cal.4th at pp. 664–665.) However, noting the limited constitutional restrictions on the right to take—that is, that the taking be for a public purpose, which the owner did not dispute—the Supreme Court held that, under the circumstances of the case, the owner was only being required to give up a *statutory* right in respect to the challenges it had wished to raise. It further held that conditioning the statutory right to "fully litigate" the right to take issue on leaving the deposit intact was thoroughly reasonable, because an owner could not equitably maintain a claim that the property should not be taken at the same time that the owner chose to withdraw the money. (*Id.* at p. 665.)

The court also pointed out that the Eminent Domain Law has provisions for an expedited determination of the right to take question (see §§ 1260.010, 1260.110), that pretrial writ review is available for the court's decision on that issue, and that prejudgment interest at market rate will be owed if the deposit in fact proves to be inadequate. (*Mt. San Jacinto, supra*, 40 Cal.4th at p. 665; see also *Redevelopment Agency v. Gilmore, supra*, 38 Cal.3d at p. 802.) Finally, the condemner's deposit must be supported by a qualified appraisal (§ 1255.010) and the condemner must also pay up to $5,000 for an *independent* appraisal for the property owner at the time of the original offer to purchase. (§ 1263.025, subd. (a).) These factors served to bear out the conclusion that the Legislature had acted permissibly by fixing the valuation date at the time of the initial deposit.

■ Owners argue that the holding in *Mt. San Jacinto* depends on the fact that the initial deposit in that case was adequate. They cite language near the end of the opinion to the effect that "[w]here, as here, a deposit of probable compensation is made, *and the trial court determines that the deposit equals or exceeds the probable amount of the owner's just compensation*, the

---

[9] The owners' motion for an increase in the deposit was denied, as the trial court found the deposit equaled the "probable compensation" to be awarded.

property must be valued on the date of the deposit." (*Mt. San Jacinto, supra,* 40 Cal.4th at p. 666, italics added.) The emphasized portion of the statement is dicta because the adequacy of the deposit was not in question. More substantively, we believe the emphasized portion of the statement is undercut by the court's previous recitations of the statutory framework and its "safeguards." Most significantly, the Supreme Court made the point that under section 1263.110, subdivision (b), "[i]f the deposit does not meet the amount of probable compensation and is not increased within the time allowed, the deposit is void *and will not be used to determine the date of valuation.*" (*Mt. San Jacinto, supra,* at pp. 660–661, italics added.) The clear import of this statement—and the statute upon which it is based—is that if the trial court finds the deposit inadequate and orders it to be increased, and the condemner *does so,* the date of deposit *will* be used. Any other result would encourage the owner to delay in seeking an increase in a deposit which—by the delay—he or she is evidently not in a hurry to withdraw anyway.

A related concern of the rule, which owners purport to see in the Supreme Court's language, would be the impossibility of knowing the valuation date with any certainty. In *Mt. San Jacinto,* the court clearly recognized the undesirability both of such uncertainty[10] and of encouraging, or allowing, the strategic delay mentioned in the preceding paragraph. (*Mt. San Jacinto, supra,* 40 Cal.App.4th at p. 662.)[11]

At most, we are prepared to accept that the language from *Mt. San Jacinto,* on which owners rely, might have been intended to preserve the issue of changing the valuation date when a deposit is found inadequate for future consideration. However, even assuming such inadequacy,[12] this case provides no basis on which to depart from the statutory rule. The Supreme Court in the former case clearly approved of the statutory scheme and the "safeguards in place" to ensure that the condemner made a reasonable deposit. (*Mt. San Jacinto, supra,* 40 Cal.4th at pp. 659–661.)

[10] The condemner obviously needs to know what the date of valuation will be as soon as possible, in order to factor the predicted judgment into budget and financing considerations. An inability to do so would often have severe planning ramifications.

[11] It is also to be noted that the state Constitution provides for a jury trial on compensation. (Cal. Const., art. I, § 19.) To allow the trial court to alter the valuation date based upon a perceived inadequacy in the deposit would have the peculiar result that although the trial court could not determine value for compensation purposes (absent the parties' waiver of the right to jury trial), the trial court's opinion on value with respect to the adequacy of the deposit would permit the trial court to shift the valuation date—a decision which can be of crucial significance in the litigation.

[12] The trial court's decision seems to have been more akin to a quotient verdict, as it simply totaled the two appraisals and divided the result in half. Whether this represented a reasoned evaluation of the competing views on severance damages we need not determine.

██ In our view, the trial court here erred when it determined, apparently on the basis of some empirical experience, that "the delays and costs defendants must incur" to seek an increase made the procedure inadequate.[13] It is well recognized that a legislative body need not always create a "complete relief" for constitutional violations, and that a procedure will be held adequate if it provides "meaningful safeguards or remedies." (*Schweiker v. Chilicky* (1988) 487 U.S. 412, 425 [101 L.Ed.2d 370, 108 S.Ct. 2460]; see also *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1023 [103 Cal.Rptr.2d 711, 16 P.3d 130] [holding that a landlord who was able to obtain judicial review of an allegedly confiscatory rent control ruling had no substantive tort claim].) Here, an owner who believes that a deposit is too low may move the court for an order increasing it. We see nothing inherently "inadequate" about this remedy and we decline to assume that it is unacceptably costly or time consuming. Although owners waited well over a year to seek an increase, the record reflects no explanation or cause attributable for that delay—and certainly none attributable to the district. As for expense, the owners evidently felt that the motion *was* worth whatever attorney fees were incurred, because in fact they were *not* deterred from making it. There is no basis whatsoever for a conclusion that the statutory remedy of requesting an additional deposit, if it had been pursued diligently, would not have secured adequate relief to owners.

This would not be the first case in which an owner attempted to strategize himself or herself into a windfall, but such efforts have not met with a sympathetic reception. In *People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791 [94 Cal.Rptr.2d 609, 996 P.2d 711] (*Edison*), the property owner agreed to let the condemner take possession of the property while the parties attempted to negotiate a price.[14] The condemner did not actually file an eminent domain action for almost 25 years, and even then only after the owner sued in inverse condemnation. The trial court determined that the date of valuation should be the date of eventual deposit of probable compensation in the eminent domain case, which of course resulted in a hugely increased compensation award to the owner compared with the date of possession. The Supreme Court declined to review this part of the judgment, but addressed the trial court's ruling that statutory interest accrued from the date of possession pursuant to section 1268.350, subdivision (b).[15]

---

[13] A defendant is normally entitled to recover the costs of litigation. (§ 1268.710.) If the initial offer is "unreasonable," the defendant will also recover attorney fees. (§ 1250.410.)

[14] The parcel was required for construction of a portion of the 605 Freeway between the 10 and 210 Freeways.

[15] The compensation judgment was for $49.5 million. Interest amounted to approximately $367 million.

Although the trial court, in advancing the valuation date, had relied on the condemner's breach of its agreement with the owner to "promptly" commence an eminent domain action if negotiations failed, the Supreme Court focused on the *owner's* tacit acquiescence in the delay. Noting that "courts have refused to apply our eminent domain statutes where their application would give the condemnee a ' "windfall" ' not intended by the Legislature" (*Edison, supra,* 22 Cal.4th at pp. 798–799), it held that the Legislature "surely did not intend to reward a sophisticated condemnee like Edison for its own lack of diligence with a bonanza in taxpayer money." (*Id.* at p. 801.)

This court too has similarly looked askance at apparent "gamesmanship" in eminent domain. In *Mt. San Jacinto Community College Dist. v. Superior Court* (2004) 117 Cal.App.4th 98 [11 Cal.Rptr.3d 465],[16] the owner—a university—began constructing educational facilities on the property *after* the eminent domain action was commenced and *after* the condemner had made a deposit of probable compensation. The trial court ruled that the owner could not introduce evidence of the value of the improvements in the eminent domain action, and the owner then filed a separate action in inverse condemnation seeking compensation for the same buildings. When the latter matter came before this court, we ruled for the condemner. We pointed out that section 1263.240 specifically prohibited compensation for postsummons improvements *unless* one of three situations obtained—as relevant to that case, that the owner had obtained advance court approval for the improvements. (§ 1263.240, subd. (c).) We framed the issue as "whether a landowner may deliberately forgo the legislative remedy that safeguards its right to just compensation, construct improvements without the condemner's consent or judicial approval, and *still* demand compensation through an inverse condemnation action." (*Mt. San Jacinto Community College Dist. v. Superior Court, supra,* 117 Cal.App.4th at p. 108.) The answer was "no." (*Ibid.*)

For these reasons too, the trial court's view of the statutory procedures was inappropriate. While we do not find that owners were in fact deliberately attempting to put themselves in position for a windfall, we could not approve of a rule that rewarded a failure to pursue a statutory remedy.

Finally, the remedy selected by the trial court had no direct relationship to whatever wrongs might have been done by the district. By the time of the hearing, the parties' appraisers were in substantial agreement concerning the

---

[16] The underlying case was the same as that involved in the Supreme Court *Mt. San Jacinto, supra,* 40 Cal.4th 648, opinion, but the opinion cited arose from a different appellate petition.

actual value of the easement; the dispute related solely to the issue of severance damages. But, given the purpose of the deposit and withdrawal procedures in this case, a "lowball" deposit with respect to such damages was essentially insignificant. First of all, when the condemned interest is an easement, the owner is not necessarily placed in the position of being forced to buy new property if he wishes to benefit from expected appreciation in the market. In this case, the deposit of compensation was obviously inadequate to permit owners to buy a new parcel and was never really designed for that purpose. Second, the severance damages only addressed the use and development of the property, not its replacement. We are satisfied that any insufficiency in the deposit in this respect could be appropriately remedied with an award of prejudgment interest. Thus, a change in the valuation date was not necessary to ensure "just compensation."

██ In summary, if owners were dissatisfied with the amount of the deposit, they could have moved more quickly to demand an increase, and this remedy was constitutionally adequate. This being so, the trial court abused its authority in departing from the statutory valuation date established by section 1263.110, subdivision (a).

## DISPOSITION

The petition for writ of mandate is granted.

██ Code of Civil Procedure section 1268.720 sets out a general rule that a defendant landowner is entitled to his costs on appeal; this is not restricted to the situation where a defendant prevails. (*Los Angeles Unified School Dist. v. Wilshire Center Marketplace* (2001) 89 Cal.App.4th 1413, 1419 [108 Cal.Rptr.2d 691].) The purpose of the rule is to ensure that the landowner receives a net sum at the conclusion of the proceedings, which represents "just and adequate compensation" for the property. Although the court has discretion to order otherwise, such departures should be rare. (See *City of Los Angeles v. Ricards* (1973) 10 Cal.3d 385, 390 [110 Cal.Rptr. 489, 515 P.2d 585].) Accordingly, absent a clear indication of bad faith or frivolity, real parties in interest shall recover their costs.

Petitioners are directed to prepare and have the writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

Hollenhorst, Acting P. J., and Richli, J., concurred.