Filed 9/11/18 (mod.); pub. order 9/12/18 follows unmodified opinion (attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTOPHER VASQUEZ,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOLO 1 KUSTOMS, INC.,<br><br>    Defendant and Appellant. | B280152<br><br>(Los Angeles County<br> Super. Ct. No. BC555976)<br><br>ORDER MODIFYING OPINION<br><br>[No change in the judgment] |

IT IS ORDERED that the opinion filed in the above-captioned matter on August 15, 2018, be modified as follows:

1. On page 4, line 21, after the sentence "The trial court granted nonsuit and a directed verdict in Defendants' favor as to all claims except those against SOLO for violation of the Automotive Repair Act, conversion, and violation of the Consumer Legal Remedies Act (CLRA)," insert the following:

"After considering the parties' closing arguments, the court concluded that SOLO performed the repair work without authorization, which constituted a violation of section 9884.9 of the Automotive Repair

Act.  The court further concluded that SOLO had not converted Vasquez's property or violated the CLRA.  The court remarked that if there is no private cause of action under the Automotive Repair Act, judgment would have been entirely in Defendants' favor."

2.  On page 4 and continuing onto page 5, delete the entire paragraph that begins with the sentence, "The parties submitted their closing arguments in writing, after which the court issued an oral tentative statement of decision."

3.  On page 5, delete the entire paragraph that begins with the sentence, "After issuing its tentative decision, SOLO objected on the basis that there is no private cause of action under the Automotive Repair Act."

4.  On page 5 and continuing onto page 6, delete the entire paragraph that begins with the sentence, "At the hearing to consider Vasquez's objection, the court noted that the *Harris* opinion is unclear as to whether the case involved a cause of action for a violation of the Automotive Repair Act."

This modification affects no change in the judgment.

_____

BIGELOW, P.J.                 GRIMES, J.             GOODMAN, J.*

_____

*        Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/15/18 (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTOPHER VASQUEZ, | B280152 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC555976) |
| v. | |
| SOLO 1 KUSTOMS, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Terry A. Green, Judge.  Reversed.

Romero Law and Alan J. Romero for Plaintiff and Respondent.

Morris & Stone and Aaron P. Morris for Defendant and Appellant.

_____

Defendant SOLO 1 Kustoms, Inc. (SOLO) appeals a judgment in favor of plaintiff Christopher Vasquez. After a bench trial, the court found SOLO liable for performing unauthorized repair work on Vasquez's car in violation of Business and Professions Code section 9884.9, and awarded Vasquez $12,000 in damages. On appeal, SOLO contends there is no private cause of action for violation of Business and Professions Code section 9884.9. We agree and reverse the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Complaint*

In the operative first amended complaint, Vasquez alleged that SOLO and its owner, defendant Jose Hernandez, (together, Defendants), performed unauthorized repair work on his car, demanded payment for the repairs, and sold the car at a lien sale when Vasquez refused to pay. Vasquez asserted claims for violation of the Automotive Repair Act (Bus. & Prof. Code, § 9880 et seq.)[1], violation of the Consumer Legal Remedies Act (Civ. Code, § 1770 et seq.), breach of contract, breach of the covenant of good faith and fair dealing, conversion, intentional and negligent misrepresentations, and violation of Penal Code section 496.

*Trial*

The court held a bench trial over the course of two days, during which the parties presented contradictory versions of the relevant events. Vasquez testified that he was involved in a car accident, which caused his car's side airbags to deploy and damaged the bumper. Vasquez received an estimate for repair work from a shop affiliated with his insurance company, but he

---

[1]     All undesignated statutory citations are to the Business and Professions Code unless noted otherwise.

2

decided to take his car to SOLO to get a second opinion. Vasquez agreed to leave the car at SOLO overnight so that Hernandez could perform a thorough inspection before preparing an estimate for the repairs.

Vasquez was not pleased with the estimated cost of repairs at SOLO and decided to pick up his vehicle. When Vasquez went to retrieve the car, however, he saw that much of the interior had been ripped out. Hernandez refused to allow Vasquez to take the car without paying for the teardown. Over the next few weeks, Vasquez had as many as 10 conversations with Hernandez about returning his car, but Hernandez continued to demand payment.

At some point, Vasquez filed a complaint with the Bureau of Automotive Repair (Bureau). A Bureau representative contacted Vasquez and informed him he could pick up his car free of charge, but he would need to sign a waiver. Vasquez did not know the terms of the waiver, but he did not want to sign one because he did not trust the Bureau representative. As a result, Vasquez did not attempt to reclaim his car, and it was eventually sold at a lien sale.

Vasquez believed his car was worth approximately $12,000 at the time he dropped it off at SOLO, but he still owed about $24,000 on his car loan. For two months, Vasquez rented a car to get to and from work, which cost approximately $2,000. He also relied on other people to drive him to work, and he was often late as a result. Vasquez eventually lost his job due to tardiness.

Hernandez testified to a much different version of events. According to Hernandez, he agreed to honor the estimate from the repair shop affiliated with Vasquez's insurance company. After doing so, Hernandez received explicit authorization from Vasquez and his insurance company to begin work on the vehicle.

At Vasquez's request, Hernandez began the work immediately, and he ordered parts costing around $3,000. A few days later, Vasquez demanded Hernandez return his car. Hernandez, however, refused to return the car without payment for the work that had already been done.

About a month after the dispute arose, Hernandez met with the Bureau representative, who convinced him to release the car without charge. Thereafter, a SOLO employee called Vasquez several times informing him he could pick up the car without charge. Hernandez did not insist that Vasquez sign a waiver.

Vasquez did not respond to the calls, and Hernandez mailed Vasquez a letter notifying him that if he did not retrieve his car, it would be considered abandoned. The car remained at SOLO for approximately six or seven months. Hernandez eventually hired a company to conduct a lien sale, which was executed lawfully. The car was sold for $4,000.[2]

*Trial Court Decision*

The trial court granted nonsuit and a directed verdict in Defendants' favor as to all claims except those against SOLO for violation of the Automotive Repair Act, conversion, and violation of the Consumer Legal Remedies Act (CLRA).

The parties submitted their closing arguments in writing, after which the court issued an oral tentative statement of decision. The court began by noting that both Vasquez and Hernandez were credible witnesses. In the court's opinion, the parties simply viewed the facts in a different light, which led to a misunderstanding as to whether Vasquez had given authorization for the repair work. The court acknowledged that

---

[2]    Prior to selling the car, Hernandez installed the parts he ordered for the repairs.

4

authorization can be oral, but felt SOLO should have the "burden of producing a writing to make sure we never have these misunderstandings." Because SOLO could not produce such a writing, the court concluded it performed the repair work without authorization, which constituted a violation of section 9884.9 of the Automotive Repair Act. The court further concluded that SOLO had not converted Vasquez's property or violated the CLRA.

The court determined Vasquez's total damages from SOLO's violation of section 9884.9 were $24,000, which represented the remaining balance of his car loan.[3] The court, however, reduced SOLO's liability to $12,000 because Vasquez failed to mitigate his damages by picking up his car free of charge.

After issuing its tentative decision, SOLO objected on the basis that there is no private cause of action under the Automotive Repair Act.[4] The court took a brief recess to consider the issue, after which it decided to enter judgment for SOLO. Defendants prepared a proposed judgment, to which Vasquez objected on the ground that there is a private cause of action under the Automotive Repair Act. In support, Vasquez cited *Harris v. Dixon Cadillac Co.* (1982) 132 Cal.App.3d 485 (*Harris*).

At the hearing to consider Vasquez's objection, the court noted that the *Harris* opinion is unclear as to whether the case involved a cause of action for a violation of the Automotive Repair

---

[3] The court did not include in the measure of damages the cost of rental cars or the harm of Vasquez losing his job, noting that such damages were too attenuated.

[4] Defendants had previously raised the issue in their trial brief.

5

Act. To gain some clarity on the issue, the court contacted counsel in the *Harris* case, who reported that the plaintiff had pleaded such a claim. Based on this representation, the court concluded there is a private cause of action for violation of section 9884.9. The court reasoned: "I find it hard to believe that the Court of Appeal would do a published opinion discussing lots of matters but not discussing the fact that there was no private right of action or in fact that was their opinion that there was no cause of action. I can only assume that the Court of Appeal would never mislead us." The court remarked that if there is no private cause of action under the Automotive Repair Act, judgment would have been entirely in Defendants' favor.

The court entered judgment against SOLO and in favor of Vasquez for $12,000. SOLO timely appealed.

## DISCUSSION

SOLO contends the judgment must be reversed because there is no private cause of action for violation of section 9884.9.[5]

---

[5] Vasquez urges us not to consider SOLO's argument because it was raised for the first time after trial. Initially, Vasquez's assertion is factually inaccurate; SOLO argued in its trial brief, which it filed the first day of trial, that there is no private cause of action under the Automotive Repair Act.

Moreover, Vasquez's reliance on *Nelson v. Dept. Alcoholic Bev. Control* (1959) 166 Cal.App.2d 783, is misplaced. In that case, the court declined to consider, in connection with an appeal of a post-trial judgment, the appellant's argument that the respondent failed to plead sufficient facts supporting an element of a certain cause of action. (*Id*. at pp. 787–788.) The court reasoned that the requisite facts were implicitly pleaded, the appellant did not appear misled or prejudiced by the deficiency, and the case was tried on the assumption that the respondent had sufficiently pleaded the cause of action. (*Ibid*.)

6

We agree.[6]

### A. Legal Principles

"A violation of a state statute does not necessarily give rise to a private cause of action.  [Citation.]  Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute.  [Citations.]" (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596 (*Lu*); see *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 (*Moradi-Shalal*).)  "If the Legislature intended a private right of action, that usually ends the inquiry.  If the Legislature intended there be no private right of action, that usually ends the inquiry. If we determine the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action." (*Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 142; see *Moradi-Shalal, supra*, 46 Cal.3d at p. 305; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 132 (*Crusader*).)

---

Here, in contrast, the issue is not whether Vasquez pleaded all the elements of a cause of action for violation of section 9884.9.  Rather, it is whether there is even a private cause of action for violation of section 9884.9.  As Vasquez acknowledges, "the issue of whether a cause of action is stated is not waived by the failure to raise it in the trial court, and it may be raised for the first time on appeal." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 7, fn. 2; see Code Civ. Proc., § 430.80, subd. (a).)

[6]      Vasquez argued in his respondent's brief that there is a private case of action for violation of section 9884.9.  At oral argument, however, he essentially conceded the issue.

7

The Legislature's intention to create a private cause of action must be expressly stated or strongly implied in the statutory language or legislative history. (*Lu, supra*, 50 Cal.4th at p. 596; *Farmers Ins. Exchange v. Superior Court* (2006) 137 Cal.App.4th 842, 850.) A statute, for example, "may expressly state that a person has or is liable for a cause of action for a particular violation. (See, e.g., Civ. Code, § 51.9 ['A person is liable in a cause of action for sexual harassment' when a plaintiff proves certain elements]; Health & Saf. Code, § 1285, subd. (c) ['Any person who is detained in a health facility solely for the nonpayment of a bill has a cause of action against the health facility for the detention . . . .'].)" (*Lu, supra*, 50 Cal.4th at p. 597.) Alternatively, the statute "may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action. (See, e.g., [Lab. Code] § 218 ['Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article']; Bus. & Prof. Code, § 17070 ['Any person . . . may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages']; *id*., § 6175.4, subd. (a) ['A client who suffers any damage as the result of a violation of this article by any lawyer may bring an action against that person to recover or obtain one or more of the following remedies']; Civ. Code, § 1748.7, subd. (d) ['Any person injured by a violation of this section may bring an action for the recovery of damages, equitable relief, and reasonable attorney's fees and costs']; *see Crusader, supra*, 54 Cal.App.4th at p. 136 [listing other statutes expressly creating cause of action].)" (*Lu, supra*, 50 Cal.4th at p. 597, fn. omitted.) If the statutory language is ambiguous, resort to the legislative history is necessary. (*Noe v.*

8

*Superior Court* (2015) 237 Cal.App.4th 316, 340, fn. 14; see *Lu, supra*, 50 Cal.4th at p. 597.)

Whether a statute creates a private cause of action is a question of law, and we exercise our independent judgment in resolving the issue. (*Shamsian v. Department of Conservation* (2006) 136 Cal.App.4th 621, 631.)

### B. The Automotive Repair Act

Section 9884.9 is part of the Automotive Repair Act, which is a comprehensive statutory scheme regulating automotive repair dealers.[7] The Automotive Repair Act was enacted in 1971 in response to widespread fraudulent practices in the automotive repair industry.[8] (Dept. Consumer Affairs Bill Analysis of Sen. Bill No. 51 (1971 Reg. Sess.) as amended May 10, 1971.) Its purpose is to " 'foster fair dealing, [and] to eliminate misunderstandings' [citation] in transactions involving automotive repairs." (*Parada v. Small Claims Court* (1977) 70 Cal.App.3d 766, 768–769.)

The Automotive Repair Act contains various provisions regulating dealers' interactions with customers. (See, e.g., §§ 9884.8, 9884.9, 9884.10.) Section 9884.9, in particular, provides that an automotive repair dealer "shall give to the customer a written estimated price for labor and parts necessary for a specific job. No work shall be done and no charges shall

---

[7] An automotive repair dealer is a "person who, for compensation, engages in the business of repairing or diagnosing malfunctions in motor vehicles." (§ 9880.1, subd. (a).)

[8] The Legislature has amended the Automotive Repair Act, including section 9884.9, numerous times since it was originally enacted in 1971. We do not discuss the specific amendments because they are not relevant to the issues before us.

accrue before authorization to proceed is obtained from the customer." (§ 9884.9, subd. (a).) The statute further specifies the information that must be contained in the written estimate, who may give authorization to perform the work, and the steps the dealer must take if the estimated price is insufficient. (*Id*., subds. (a)–(d).)

The Automotive Repair Act created within the Department of Consumer Affairs the Bureau of Automotive Repair. (§ 9882, subd. (a).) Automotive repair dealers are required to register with the Bureau. (§§ 9884.2, 9884.6, subd. (a).) Failure to register is a misdemeanor (§ 9889.20), and unregistered dealers are precluded from suing on a contract for vehicle repairs (§ 9884.16).

In addition to overseeing dealer registration, the Bureau is responsible for enforcement of the Automotive Repair Act.[9] (§ 9882, subd. (a).) To fulfill this duty, the Bureau is authorized to investigate, on its own initiative or in response to complaints, violations of the act. (§ 9882.5.) To that end, the Bureau is required to establish procedures for accepting complaints from the public against any dealer. (*Ibid*.) When a dealer is alleged to have committed a violation, the Bureau may suggest measures to compensate for any damages suffered. (*Ibid*.) If the dealer "accepts the suggestions and performs accordingly, such fact shall be given due consideration in any subsequent disciplinary

---

[9] Many of these powers and responsibilities are vested in the director of the Department of Consumer Affairs, rather than directly in the Bureau of Automotive Repair. (See, e.g., §§ 9882.5, 9884.7, 9884.15, 9884.22.) The distinction is immaterial for our purposes, and for the sake of simplicity, we refer to the powers and responsibilities as belonging to the Bureau.

10

proceeding." (*Ibid.*)

The Bureau is also authorized to pursue criminal, civil, and administrative penalties and remedies in response to violations of the act. It is a misdemeanor to violate many provisions of the act, including section 9884.9, and the Bureau is authorized to file charges with a district or city attorney. (§§ 9884.15, 9889.20.) The Bureau may also seek in the superior court an injunction or other appropriate order restraining the dealer from committing violations. (§ 9884.14.) In addition, the Bureau may issue a citation, and suspend or revoke the dealer's registration. (§§ 9882, subd. (a), 9884.7, subd. (a)(6), 9884.22.)

**C.    There is No Private Cause of Action For Violation of Section 9884.9**

The trial court entered judgment in favor of Vasquez based entirely on its finding that SOLO violated section 9884.9 by performing unauthorized repair work on Vasquez's car. Section 9884.9 does not, however, contain any language "strongly and directly indicat[ing] that the Legislature intended to create a private cause of action." (*Lu, supra*, 50 Cal.4th at p. 597.) In fact, the statute is entirely silent on the issue of enforcement.

Nor is there language in other sections of the Automotive Repair Act to even suggest an intent to create a private cause of action, despite the fact that the Legislature certainly knew how to do so. Indeed, thirty years before enacting the Automotive Repair Act, the Legislature enacted the Unfair Practices Act, which enumerates various prohibited trade practices and provides that "[a]ny person or trade association may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages." (§ 17070.) No comparable language appears anywhere in the Automotive

11

Repair Act. Given the complete lack of statutory language manifesting a Legislative intent to create a private cause of action, we conclude there is no private cause of action for violation of section 9884.9.[10]

Our conclusion finds further support in the fact that, in stark contrast to the complete lack of statutory language manifesting an intent to create a private cause of action, the Legislature expressly provided numerous mechanisms for the Bureau of Automotive Repair to enforce section 9884.9. Indeed, the Legislature gave the Bureau broad authority to investigate violations and pursue criminal, civil, and administrative penalties and remedies in response. (See, e.g., §§ 9884.7, subd. (a)(6), 9884.14, 9884.15, 9889.20.) The fact that the Legislature created such a comprehensive enforcement scheme without expressly providing for a private cause of action is a strong indication that it did not intend to create one. (*Animal Legal Defense Fund v. Mendes, supra*, 160 Cal.App.4th at p. 144; *Farmers Ins. Exchange v. Superior Court, supra*, 137 Cal.App.4th at pp. 850, 855.)

We also do not think a private cause of action is necessary to protect customers. A dealer who violates section 9884.9 may not charge the customer or recover its costs for any work done, which in many cases will ensure the violation causes no harm to the customer. (§ 9884.9, subd. (a); see *Hibbs v. Allstate Ins. Co.*

---

[10] Because there is no statutory language that could be reasonably interpreted as expressing an intent to create a private cause of action, we need not resort to the legislative history. (*Noe v. Superior Court, supra*, 237 Cal.App.4th at p. 340, fn. 14.) Nevertheless, we note that Vasquez fails to point to any legislative history manifesting such an intent, and we have found none in our own research.

12

(2011) 193 Cal.App.4th 809, 817 [a dealer "who fails to comply with section 9884.9 may not recover under any theory"]; *Bennett v. Hayes* (1975) 53 Cal.App.3d 700, 704 [refusing to grant equitable relief to dealer who violated section 9884.9].)  In the event the dealer refuses to release a vehicle without payment, the customer may file a complaint with the Bureau of Automotive Repair, which has the authority to mediate disputes and pursue other remedies to protect the customer.  (See §§ 9882.5, 9880.3 ["Protection of the public shall be the highest priority for the Bureau of Automotive Repair in exercising its licensing, regulatory, and disciplinary functions."].)  In addition, the customer may file a civil action asserting a cause of action for conversion or trespass to chattels.  (See, e.g., *Harris, supra,* 132 Cal.App.3d 485.)  The customer also remains free to assert other common law and statutory causes of action arising out of the violation.  (§ 9884.18; see *Moradi-Shalal, supra*, 46 Cal.3d at pp. 304–305.)  We think these measures are likely to provide sufficient protection for customers.

Vasquez's reliance on *Harris, supra*, 132 Cal.App.3d 485, is misplaced.  In that case, a dealer repaired the plaintiff's car without providing a written estimate or receiving authorization.  (*Id*. at p. 488.)  When the plaintiff refused to pay for the repairs, the dealer refused to return her car.  (*Ibid*.)  Eventually, the plaintiff brought a civil action against the dealer, and apparently pleaded causes of action for wrongful possession and violations of section 9884.9.  (*See id*. at pp. 487, 494.)  A jury found in the plaintiff's favor and awarded her general and punitive damages.  (*Id*. at p. 488.)

13

On appeal, the dealer challenged only the award of damages, and the court affirmed the judgment.[11] (*Harris, supra*, 132 Cal.App.3d at pp. 489–495.) The court determined the award of general damages was reasonable and supported by sufficient evidence showing the value of the loss of use of the car while it was detained by the dealer. (*Id.* at pp. 492–493.) The court further explained that the violations of section 9884.9 were evidence that the dealer acted with malice, which provided support for the award of punitive damages. (*Id.* at p. 494.)

In relying on *Harris,* Vasquez ignores a fundamental principle of jurisprudence that "an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; see *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 343 ["A decision, of course, does not stand for a proposition not considered by the court."].) The *Harris* court considered only whether the award of damages was proper; it did not address whether there is a private cause of action for violation of section 9884.9. Nor was it necessary for the *Harris* court to implicitly make such a finding in order to affirm the judgment. Indeed, the court explained that the plaintiff's general damages arose entirely from the dealer's wrongful possession of her car, which itself provided a common law cause of action distinct from the violations of section 9884.9.[12] (See e.g.,

---

[11]    Based on the parties' stipulation, the court modified the judgment to reduce the award of general damages by $2,500. (*Harris, supra*, 132 Cal.App.3d at pp. 489–490.) The reasons for the reduction are not relevant here.

[12]    This is not to say the wrongful possession cause of action was unrelated to the violations of section 9884.9. To the contrary, the violations explained why the dealer's continued

14

*Jamgotchian v. Slender* (2009) 170 Cal.App.4th 1384, 1401 [discussing the tort of trespass to chattels]; *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 [discussing the tort of conversion]; Rest.2d Torts, §§ 221, 222A, 223.)  Moreover, although the court referred to the violations of section 9884.9 while discussing the award of punitive damages, it did so only to explain that the violations were evidence of the dealer's malice.  The court did not find that the violations, in and of themselves, gave rise to liability.  Consequently, *Harris* has no precedential value on the issue of whether section 9884.9 contains a private cause of action.

   We also find no merit to Vasquez's brief contention that the Legislature expressed its intention to create a private cause of action in section 9884.18, which states:  "Nothing in the provisions of [the Automotive Repair Act] shall prohibit the bringing of a civil action against an automotive repair dealer by an individual." (§ 9884.18.)  Contrary to Vasquez's suggestions, this language simply expresses that the Automotive Repair Act was not intended to replace other forms of civil liability.  It does not indicate an affirmative intent to create a new private cause of action.

---

possession of the car was wrongful.  A statutory violation, however, may provide evidence of an element of a pre-existing cause of action without creating a wholly new private right to sue. (*Crusader, supra,* 54 Cal.App.4th at p. 125; see *Moradi-Shalal, supra*, 46 Cal.3d at pp. 304–305.)

15

*Moradi-Shalal, supra*, 46 Cal.3d 287, is instructive. In that case, the California Supreme Court determined that the Legislature did not manifest an intent to create a private cause of action when it enacted a statute stating the imposition of a certain administrative remedy "shall [not] in any way relieve or absolve such person from any . . . civil liability . . . under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." (Ins. Code, § 790.09.) The high court agreed that, if "the Legislature truly had intended to grant third party claimants a private cause of action . . . , 'then surely much more direct and precise language would have been selected' . . . . '[O]ne would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, unmistakable terms, as it has done in numerous other statutes.' " (*Moradi-Shalal, supra*, 46 Cal.3d at pp. 294–295, 304, quoting *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, 896 (conc. & dis. opn. of Richardson, J.).) Here, too, one would reasonably expect the Legislature to have used much more direct language than section 9884.18 had it intended to create a private cause of action against a dealer for a violation of section 9884.9.

Finally, we reject Vasquez's suggestions that we affirm the judgment on a theory of unjust enrichment or wrongful possession, despite his failure to raise those theories in the trial court.[13] " 'The rule is well settled that the theory upon which a

---

[13] The trial court determined there was no conversion, and Vasquez did not cross-appeal the judgment. Generally, a respondent who has not appealed from the judgment may not urge error on appeal. (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585.) Therefore, we presume that when

16

case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant. [Citation.]' [Citations.]" (*Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874; see *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 623 ["appellant cannot challenge a judgment on the basis of a new cause of action it did not advance below"].) Despite this general rule, courts have discretion to consider a new theory on appeal if it involves a legal question based on undisputed facts. (*In re Marriage Priem* (2013) 214 Cal.App.4th 505, 511; *Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) Here, however, Vasquez fails to provide any meaningful analysis explaining how the undisputed facts entitle him to relief, as a matter of law, on a theory of wrongful possession or unjust enrichment. In addition, we have no means of assessing damages under such theories. Accordingly, we follow the general rule and decline to consider Vasquez's theories of liability raised for the first time on appeal.[14]

---

Vasquez refers to "wrongful possession," he means something other than conversion.

[14] Because we conclude there is no private cause of action for violation of section 9884.9, we need not consider SOLO's alternative argument that the court erred in awarding damages to Vasquez.

## DISPOSITION

The judgment is reversed.  On remand, the trial court shall enter judgment in favor of SOLO.  SOLO is awarded its costs on appeal.


                                        BIGELOW, P.J.

We concur:


        GRIMES, J.


        GOODMAN, J.*

---

\*       Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHRISTOPHER VASQUEZ,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>SOLO 1 KUSTOMS, INC.,<br><br>　　Defendant and Appellant. | B280152<br><br>(Los Angeles County<br>　Super. Ct. No. BC555976)<br><br>ORDER CERTIFYING<br>PUBLICATION<br><br>　[No change in the judgment] |

THE COURT:

　　The opinion in the above entitled matter was filed on August 15, 2018, and modified on September 11, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

BIGELOW, P. J.　　　　GRIMES, J.　　　　GOODMAN, J.*

_____

*　　Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.